**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MARKLE MANUFACTURING COMPANY OF SAN ANTONIO, Respondent.**

No. 79–1528.

United States Court of Appeals, Fifth Circuit.

Aug. 15, 1980.

Elliott Moore, Deputy Associate, Gen. Counsel, N.L.R.B., Joseph A. Oertel, Atty., Washington, D.C., for petitioner.

Manitzas, Foster & Harris, Frank S. Manitzas, San Antonio, Tex., for respondent.

Before GODBOLD, GARZA, and RANDALL, Circuit Judges.

GODBOLD, Circuit Judge:

In this case the National Labors Relations Board, acting on the employer's complaint charging strike violence and misconduct by named union agents, entered a consent order agreed to by employer and union that directed the cessation of strike violence by the union and its agents. This court, also by consent, ordered enforcement of the Board's order. Later the Board brought a second case, initiated on the complaint of the union, charging the employer with unfair practices for failure to reinstate economic strikers who were alleged in the first case to have committed the violence there charged. We are concerned with the effect in this second case of the Board's order and this court's order entered in the first case.

In *Mosher Steel Co. v. NLRB*, 568 F.2d 436 (5th Cir. 1978), the first case included a charge by the employer that a named person committed strike misconduct; that case went to hearing and findings were made that the misconduct was committed as charged. We held in *Mosher* that the occurrence of the misconduct could not be relitigated in the second case, in which the employer was charged for refusing to reinstate the employee earlier held to have committed the misconduct. In the present case, the Board distinguished *Mosher Steel* on the ground that here, in the first proceeding, there were no findings that the alleged misconduct occurred and, therefore, the issue was not precluded from being litigated in the refusal-to-reinstate case. It ordered reinstatement and lost earnings for employees who had been charged with violence in the first case.

We hold that the Board was not precluded from litigating the violence issue in the second case and grant enforcement of its reinstatement order, but we limit the remedy as described below.

In February 1975 the collective bargaining agreement between Markle Manufacturing Company, of San Antonio, Texas, and the union[1] was terminated at the option of the union. In July a strike began at the Markle plant. A barrage of charges were filed with the Board by union and employer. The present dispute is only a small segment of the multifarious differ-

---

1. International Union of Electrical, Radio & Machine Workers.

ences. We have tried to reduce the facts to manageable size.

In November the company filed charges that the union had engaged in violence and misconduct. Later this became case No. 23–CB–1773 (the "first case").

On December 20 the union made an unconditional offer to return to work. Two days later, December 22, the company notified the union that all strikers had been replaced or their jobs eliminated because of economic considerations, and that some strikers were not eligible for reinstatement in any event because of their participation in strike violence and misconduct.[2]

The regional director investigated the company's charges of union violence and misconduct, filed in November 1975. The union representative declined to give statements in the investigation. According to testimony given later by this union representative, when the union was served with the company's unfair practice charges the company already had sued the union for two and a half million dollars, a petition for injunction against the union had just been resolved or was in the process of being resolved, and criminal indictments had been brought against two union members ("Willie" Suarez, charged with aggravated assault with a deadly weapon, and another unidentified employee). The union representative had consulted with the union attorney who advised that the union should not present statements during the regional director's investigation lest prejudice should result to the other litigation pending. The regional director told the union representative that if the union persisted in its refusal to present statements a complaint would issue. The union persisted and, on February 3, the regional director issued the complaint, as 23–CB–1773, charging that the union by and through its agents, had engaged in various acts of violence and misconduct, as follows:

8.

On the dates appearing below Respondent, by and through its agents named below, in the presence of its President and/or Secretary-treasurer, engaged in the following acts and conduct:

(a) On or about July 11, 1975, Respondent's President Feles Cantu followed a group of non-striking employees from Employer's premises in his automobile on Interstate Highway 35 South, in the city of San Antonio, Texas, cutting back and forth in front of said vehicle in a hazardous manner and in an attempt to block the vehicle in which the non-striking employees were driving.

(b) On or about August 25, 1975, picket Robert Almaraz threatened employees who were attempting to cross Respondent's picket line at Employer's premises by stating to them that if they went into Employer's premises they were going to get it.

(c) On or about September 11, 1975, picket Marvin O'Neil threatened non-striking employees attempting to enter Employer's premises by stating that those employees engaging in the strike would get them.

(d) On or about September 12, 1975, picket Robert Almaraz threatened non-striking employees were going to get them.

(e) On or about September 16, 1975, picketing employees Guillermo "Willie" Suarez and J. Navarro threatened a non-striking employee at the premises of Employer with physical violence should said employee continue to work at Employer.

(f) On or about September 17, 1975, picket Robert Almaraz at Employer's premises threatened a non-striking employee with physical violence if Almaraz caught said non-striking employee away from Employer's premises.

(g) On or about September 27, 1975, picket Robert Almaraz threatened a non-

---

**2.** The next day the union filed charges that the company had violated the Act by refusing to reinstate 47 named unfair labor practice strikers. After investigation the regional director issued a complaint on these charges on March 19, 1976. Later the case lost its significance because in still another case an ALJ later found that the strike was an economic strike.

striking employee at Employer's premises by stating that Almaraz was going to kill said non-striking employee.

(h) On or about November 6, 1975, striking employees Guillermo "Willie" Suarez and J. Navarro accosted employee Francisco Escamilla as he was attempting to enter Employer's premises in his automobile, physically beat said employee, and threatened him by stating that they would kill him if he reported the incident to the police.

### 9.

Commencing on or about August 19, 1975, and continuing thereafter until on or about September 15, 1975, Respondent's pickets, in the presence of its president and/or secretary-treasurer, positioned themselves so as to block ingress and egress of employees and other persons attempting to pass through Employer's main entrance.[3]

The union representative sought the advice of the union's attorney concerning this strike misconduct complaint and was advised to settle it by executing a settlement stipulation with a nonadmission clause. On April 11 the union, the company and the regional director executed a formal settlement stipulation in 23–CB–1773 providing for entry of a consent order by the Board and a consent judgment by any appropriate court of appeals. The only facts agreed to were jurisdictional facts. No facts concerning the alleged strike misconduct were agreed to, and the stipulation contained a nonadmission clause. It also included a provision that the parties waived all further and other procedures before the Board to which they might be entitled under the Act and the Board's regulations.

The matter went to the Board for entry of an order as agreed, and, on June 15, after making jurisdictional findings based on the agreed facts, the Board approved the settlement stipulation and ordered that the union, its officers, agents, and representatives cease and desist from:

(a) Committing acts of physical violence upon the persons of non-striking employees of Markle Manufacturing Company with, including but not limited to, fists, firearms, hard objects, and/or vehicles.

(b) Threatening to commit acts of physical violence on the persons of nonstriking employees of Markle Manufacturing Company.

(c) Blocking ingress and egress of employees and other persons attempting to pass through Markle Manufacturing Company's main entrance.

(d) In any other manner restraining or coercing the employees of Markle Manufacturing Company in the exercise of their rights guaranteed by Section 7 of the National Labor Relations Act, as amended.

The Board made no findings other than the jurisdictional facts. The Board petitioned this court for an enforcement order, and, on July 15, 1976, the court entered such an order.

The ALJ's finding, made in a separate case, n.2, *supra*, that the strike was not an unfair practice strike, if adopted by the Board, meant that strikers were entitled to reinstatement if and when vacancies occurred in their former or equivalent positions. The company, however, offered reinstatement to only some of the strikers who the union claimed were entitled to it. In May 1977, some 15 months after the consent settlement concerning strike violence, entered in 23–CB–1773, the union filed charges alleging refusal to reinstate 16 named economic strikers whose positions had become available but who had not been reinstated. The six charged with strike misconduct in 23–CB–1773 were included. A complaint issued in June 1977.

In August and September 1977, the ALJ conducted a hearing on the union complaint charging failure to reinstate strik-

---

**3.** These charges name six employees. For reasons explained below, employee Marvin O'Neil, named in ¶ 8(c), drops out of the case.

ers.[4] The company contended that the Board was estopped or barred from charging or attempting to prove that the employer had committed unfair labor practices by refusing to reinstate the persons whose misconduct had been alleged in the first case. The ALJ ruled that the proceedings in 23–CB–1773 did not bar the general counsel from presenting testimony by the employees charged in the first case with misconduct, to the effect that they had not engaged in strike violations or misconduct. But the ALJ held that because of the prior proceedings and consent order the employer had a good faith belief that the employees had engaged in strike misconduct and therefore the burden of proof shifted to the regional director to establish that they had not engaged in such misconduct. Five of the employees were presented as witnesses for the general counsel and denied committing any violence or other misconduct.[5] The company refused to cross-examine these employees or to produce any evidence refuting their testimony and stood on its position that as a matter of law the Board could neither charge it with an unfair practice for refusing to reinstate the employees nor present their testimony to sustain the charge. The ALJ credited the testimony of the five and found that they had committed no violence or misconduct. The Board adopted his findings and ordered the employer to reinstate the five employees with back pay and to cease and desist from interfering with employees in the exercise of § 7 rights. 239 NLRB No. 168.[6] We are asked to enforce this order.

In *Mosher Steel Co., supra,* we considered the application of collateral estoppel to the administrative process and held that it was not normally applied to conclusions of law made by administrative agencies but may be applied to facts previously adjudicated. In *Mosher,* the fact of the employee's conduct having been determined, we held that it was error to relitigate the question, and, after examining the employee's conduct as established in the first case, found that the employer was justified in not reinstating him.[7]

We agree with the Board that this case is not controlled by collateral estoppel in general or *Mosher* in particular because the fact issue of misconduct was not determined in the first case.

■■■ Markle makes a separate argument that litigation of the violence issue is barred because the Board is impermissibly taking inconsistent positions with respect to the same matter in successive suits. *Scarano v. Central Railroad Co. of New Jersey,* 203 F.2d 510 (3d Cir. 1953); 1B Moore's Federal Practice ¶ 0.405[8] (2d ed. 1979); Beck, *Estoppel Against Inconsistent Positions in Judicial Proceedings,* 9 Brooklyn L.Rev. 245 (1940); Note, *The Doctrine of Preclusion Against Inconsistent Positions in Judicial Proceedings,* 59 Harv.L.Rev. 1132 (1946). We disagree. In the first case, with respect to the ultimate question whether the named employees engaged in misconduct, the Board took no position beyond issuing a charge based upon the employer's affidavits. Neither in its order nor in securing enforcement from this court did the Board make any findings or representations of fact concerning the alleged misconduct. The nonadmission clause in the consent order was known to all. The employer argues that inconsistency is present because: the Board only issues a complaint when the evidence it possesses establishes a prima facie case; in the first case, the affi-

---

**4.** Consolidated with several other cases that are not relevant to the issue before us.

**5.** O'Neil did not testify and, as to him, the ALJ held that the general counsel failed to carry the burden of proof.

**6.** Eight other employees were ordered reinstated. Markle has not contested this part of the order or opposed enforcement. The Board has moved that we enforce the order in its entirety.

**7.** The Board argues as another ground for inapplicability of collateral estoppel in the present case that the five employees were not parties to the first case. *Mosher* answered this adversely to the Board by holding that the union was the party in both cases and that, if the employee was injured by issue preclusion, his remedy was against the union for failure to adequately protect his interest.

davits supporting the employer's complaint made out a prima facie case of misconduct else the complaint would not have issued; a prima facie case could not support the union's failure-to-reinstate complaint because, whatever affidavits the Board had from employees denying misconduct, it also had (from the first case) company affidavits to the contrary. This is too slender a basis on which to find that an unlitigated issue has been determined despite the entry of a settlement with a nonadmission clause. Where violence is alleged, it is a matter of policy for the Board to decide whether it should move to prevent future violence by issuing a consent order issued promptly without argument over the existence and extent of past violence,[8] preserving those questions for another day.

The fundamental shortcoming in the employer's position—and the element that is omitted in its expressions of outrage—is that it consented to the settlement, joined in a stipulation that did not purport to establish the facts but rather provided for nonadmission of facts, and obtained the benefit of an order against violence that it might, or might not, have otherwise secured. Also, it is implicit in the employer's argument that a consent order against future violence cannot validly issue unless there are facts either found or admitted that establish past violence. We know of no principle that requires this.

Markle points out, however, that the Board can order a consent settlement like that entered in this case even though the employer refused to join in it. The Board agrees. See *NLRB Casehandling Manual*, § 10164.7:

> Normally, the charging party is a party to the formal settlement agreement.

However, an agreement which fully remedies all unfair labor practices should be accepted—subject of course to approval by the General Counsel and the Board—whether or not the charging party acquiesces.

This procedure was followed in *Administrative Decision of the Attorney General*, No. SR–1041, 1960 CCH NLRB ¶ 9480. Markle argues that this gives the Board power, without the employer's consent and even over its objection, to preclude the employer from establishing at an early time whether it is required to reinstate an employee charged with misconduct. This argument has no play in this case where the company agreed to the settlement.[9]

Our conclusion that the Board was not barred from issuing the charges in the second case and not precluded from presenting the testimony of the five employees, is not, however, the end of the matter. It is not for this court to decide whether the Board, as an implementer of policy, should be comfortable with the opposing tensions we have described. But this court, as the agency charged with entering enforcement orders, is left in the uncomfortable position of having two enforcement orders outstanding, the first based upon allegations of violence plus consent, the second based upon the nonexistence of that same violence. It seems to us that the first order tolls any duty to reinstate and any concomitant liability for back pay until the second order is entered.[10] The Board acknowledges that the employer is entitled to rely upon the consent order to the extent that it shifts the burden of proof on right to reinstatement. The employer is also entitled to rely upon it to the extent that he is not required to reinstate the

---

**8.** There might be a question whether an order entered by a stipulation made by the union could be the basis for contempt action against individuals, but the question does not arise in this case.

**9.** The employer has not urged that the waiver provision of the settlement stipulation barred the union's bringing the refusal-to-reinstate case. We have considered it because it was mentioned at oral argument. We construe it to

apply to only the proceeding in which the stipulation was made. To apply it to all other cases in which the alleged union violence might be an issue destroys the effect of the nonadmission clause.

**10.** We inquired at oral argument whether the Board had thought of this possibility; if it had, Board counsel was not aware of it.

employees whose alleged conduct is the subject of the order unless and until the alleged facts concerning violence are found not to have existed. Otherwise the company would be in the anomalous position of having to reinstate persons charged with violence and enjoined from violence while the availability of a forum to test the facts remains in the control of the Board, or else carry the risk of having to pay two sets of employees for the same work.

It is central to this case that Markle consented to the settlement. It could have declined to join in it and if the Board joined in the settlement anyway, Markle could have intervened in this court to oppose enforcement of the order because of the potentially adverse consequences to it.

The petition to enforce the order of the Board is GRANTED with the proviso set out in this opinion concerning the time of reinstatement and the period for back pay.