TELEDYNE INDUSTRIES, INC., doing business as Teledyne Still–Man, Petitioner/Cross–Respondent,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent/Cross–Petitioner.

Nos. 89–5809, 89–5885.

United States Court of Appeals, Sixth Circuit.

Argued April 30, 1990.

Decided Aug. 23, 1990.

William Alexander Blue, Jr., Larry W. Bridgesmith (argued), Constangy, Brooks & Smith, Nashville, Tenn., Alan L. Rolnick, Constangy, Brooks & Smith, Atlanta, Ga., for petitioner/cross-respondent.

Aileen A. Armstrong, Deputy Asso. Gen. Counsel, Howard E. Perlstein, Laurence S. Zakson (argued), N.L.R.B., Office of the General Counsel, Washington, D.C., Martin M. Arlook, Director, Victor McLemore, N.L.R.B., Atlanta, Ga., for respondent/cross-petitioner.

Before MARTIN and BOGGS, Circuit Judges, and JOINER, Senior District Judge.[*]

BOYCE F. MARTIN, Jr., Circuit Judge.

This controversy stems from the discharge of two employees by Teledyne Industries following a strike at its plant in Cookeville, Tennessee, which manufactures heating elements. The two employees, Oma Stidham and Willie Wheeler, are members of the International Association of Machinists and Aerospace Workers, AFL–CIO, and its affiliated Local Lodge 2553. Stidham and Wheeler participated in the Union's long and frequently hostile strike at the Cookeville plant during 1984 and 1985. After the strike was over, Teledyne discharged Stidham and Wheeler for misconduct during the strike. The National Labor Relations Board found that by discharging Stidham and Wheeler, Teledyne

[*] The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

violated the National Labor Relations Act, 29 U.S.C. §§ 141 *et seq.* The Board ordered Teledyne to reinstate Stidham and Wheeler with backpay. Teledyne Industries now challenges the Board's order, and the Board seeks enforcement. We enforce the Board's order.

The strike began on February 1, 1984 when the Union's membership rejected a new collective bargaining agreement with Teledyne. Teledyne began hiring permanent replacements for the strikers on February 27, 1984. Striking employees had been tensely anticipating this move by Teledyne, and they allegedly responded with a campaign of intimidation to prevent their replacements from coming to work. Striking workers allegedly blocked entrances and access routes to the plant, threw rocks at the vehicles of replacement workers entering the plant, and threatened replacement workers in their homes and in the community.

After an investigation of these incidents, the Regional Director of the Board issued a complaint on March 22, 1984, alleging many violations of the Act. One allegation was that Stidham, together with other employees, followed nonstriking employees to their homes and threatened them for not joining the strike, in violation of section 8(b)(1)(A) of the Act. 29 U.S.C. § 158(b)(1)(A) (prohibits labor organizations from coercing employees in the exercise of rights guaranteed by the Act). On March 28, 1984, the Regional Director filed a petition in the United States District Court for the Middle District of Tennessee for an injunction under section 10(j) of the Act against Stidham and others to prevent further unfair labor practices. *Id.* at § 160(j). Before any action was taken on the petition, the parties settled their grievances, and the district court entered an agreed order on April 4, 1984. The agreed order enjoined the Union and others from mass picketing, blocking access to the plant, and other strike misconduct. The district court did not hold a hearing, and the parties waived any findings of fact or conclusions of law.

On August 13, 1984, more controversy ensued when Teledyne began operating a second shift at the plant with more permanent replacements and nonstriking workers. Striking workers allegedly blocked access to the plant again, struck the cars of replacement workers with rocks and other objects, and threatened and assaulted nonstriking employees. In response to a charge filed by Teledyne, the Board filed a second petition with the district court on August 15, 1984, which was amended on August 24, 1984. The second petition sought further injunctive relief and a finding of civil and criminal contempt against various strikers, including Willie Wheeler, for violation of the agreed order entered on April 4, 1984. The second petition alleged that Wheeler had blocked entrances to the plant, hit cars belonging to nonstriking employees, and threatened nonstriking employees. However, the parties again negotiated a settlement. Instead of instituting contempt proceedings, the district court entered another agreed order on August 29, 1984. This order enjoined Wheeler, along with 36 others, from picketing and from coming within 500 feet of the plant. Once again, the district court did not hold a hearing, nor did it make any findings of fact or law regarding the Board's allegations.

The strike wore on until the Teledyne employees voted to decertify the Union in April 1985. With the Union decertified, the strike ended on April 5, 1985. After the strike, Teledyne created a priority list for rehiring former striking employees. Wheeler, Stidham, and three other former striking employees were on the rehiring list, but before they could be rehired, Teledyne terminated them in early 1986 for misconduct during the strike.

■ The Regional Director of the Board issued a complaint charging Teledyne with committing an unfair labor practice by discharging Wheeler, Stidham, and the other three former employees. An employer commits an unfair labor practice if the employer refuses to reinstate or discharges an employee for exercising rights guaranteed by the National Labor Relations Act, 29

U.S.C. § 157, including participation in a lawful economic strike. 29 U.S.C. § 158(a)(1); *NLRB v. Int'l Van Lines*, 409 U.S. 48, 52, 93 S.Ct. 74, 77, 34 L.Ed.2d 201 (1972). However, employees may forfeit the Act's protection from discharge through physical violence or other unlawful conduct, if the conduct is sufficiently egregious. *Star Meat Co. v. NLRB*, 640 F.2d 13, 14 (6th Cir.1980) (per curiam).

Before an administrative law judge could hold a hearing on the Board's complaint, Teledyne filed a motion for partial summary judgment. Teledyne argued that the Board was estopped from alleging that Teledyne had committed an unfair labor practice in discharging Wheeler and Stidham. Teledyne contended that the Board had previously asserted the contrary position that Stidham and Wheeler had committed misconduct under the Act by seeking injunctive relief against Stidham and a finding of contempt against Wheeler. The administrative law judge denied Teledyne's motion and set the case for a hearing.

After an eight-day hearing in the fall of 1986, the administrative law judge found that Teledyne had violated section 8(a)(1) by discharging Wheeler and Stidham, but that the discharges of the other three employees were warranted.[1] The administrative law judge based its holding on its factual finding that neither Stidham nor Wheeler had engaged in serious strike misconduct. *NLRB v. Burnup & Sims*, 379 U.S. 21, 85 S.Ct. 171, 13 L.Ed.2d 1 (1964). The administrative law judge also found that Teledyne did not have a good faith belief that Wheeler had engaged in serious strike misconduct. This finding alone could support a holding that Teledyne had committed an unfair labor practice. *Id.* at 23, 85 S.Ct. at 172. In regard to Stidham,

the administrative law judge found that Teledyne honestly believed, albeit mistakenly, that she had engaged in strike misconduct. The administrative law judge ordered Teledyne to reinstate Stidham and Wheeler with backpay.

A three-member panel of the Board affirmed the decision of the administrative law judge on June 15, 1989.[2] The Board held that the discharge of Stidham and Wheeler for misconduct during the strike violated the Act because they were subsequently found not to have engaged in the misconduct. *See NLRB v. Burnup & Sims*, 379 U.S. 21, 85 S.Ct. 171, 13 L.Ed.2d 1 (1964). The Board also affirmed the award of backpay to Stidham and Wheeler, holding that an employer must pay backpay for a discharge in violation of the Act, regardless of whether the employer had a good faith belief that the discharged individual had engaged in misconduct. *Id.* at 23–24, 85 S.Ct. at 172–73.

We now have three issues for review: the applicability of judicial estoppel, the appropriate award of backpay, if any, and the administrative law judge's decision on the merits.

### Claim of Judicial Estoppel

Teledyne contends that the doctrine of judicial estoppel bars the Board from issuing a complaint against Teledyne for discharging Wheeler and Stidham. The doctrine of judicial estoppel forbids a party "from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding." *Reynolds v. Commissioner of Internal Revenue*, 861 F.2d 469, 472–73 (6th Cir.1988) (citations omitted).[3] Judicial es-

---

1. The administrative law judge also held that Teledyne violated section 8(a)(3) of the Act, which prohibits an employer from discriminating in the hire or tenure of an employee to discourage or encourage membership in any labor organization. 29 U.S.C. § 158(a)(3). This holding does not concern us because the Board did not reach this issue in its review of the administrative law judge's decision.

2. The Board's decision does not reflect whether Teledyne appealed to the Board its contention

that judicial estoppel barred the Board from its action in this case. Because the Board does not assert in its arguments before us that Teledyne failed to do so, we will not consider whether Teledyne's estoppel arguments are waived.

3. The doctrine of judicial estoppel does not clash with the right to plead inconsistent claims under Fed.R.Civ.P. 8(e)(2). Rule 8(e)(2) concerns the ability to plead alternative legal arguments, even if they are inconsistent or based on inconsistent facts. In contrast, judicial estoppel

toppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment. *See Scararo v. Central R.R.*, 203 F.2d 510, 513 (3d Cir.1953) (judicial estoppel precludes a party from "playing fast and loose with the courts"). In order to invoke judicial estoppel, a party must show that the opponent took a contrary position under oath in a prior proceeding and that the prior position was accepted by the court. *Reynolds*, 861 F.2d at 472–73. Teledyne contends (1) that the Board took a position in its petitions to the district court that Stidham and Wheeler engaged in serious misconduct under the Act justifying their dismissal, (2) that the agreed orders constituted judicial acceptance of that position, and (3) that the Board's current order finding that the discharges were not justified under the Act contradicts the Board's previous position in its petitions to the district court. The weakness in Teledyne's contention is that the agreed orders do not constitute judicial acceptance of the Board's prior position.

 Judicial estoppel is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement.[4] For example, before the doctrine of judicial estoppel may be invoked, the prior argument must have been accepted by the court. *Edwards v. Aetna Life Insurance Co.*, 690 F.2d 595, 599 (6th Cir.1982); *City of Kingsport v. Steel and Roof Structure, Inc.*, 500 F.2d 617 (6th Cir.1974). Although this limit allows parties to contradict themselves in court, it threatens only the integ-

rity of the parties, not of the court. *See, e.g., Fidelity & Deposit Co. v. Hudson United Bank*, 653 F.2d 766, 778–79 (3d Cir.1981) (an answer to an interrogatory in a different suit did not estop the defendant from taking a different position, although the difference could be admitted in evidence at trial). *But cf. Hamilton v. Zimmerman*, 37 Tenn. (5 Sneed) 39, 48 (1857) (under Tennessee law, courts refuse to allow inconsistent testimony, regardless of judicial acceptance, in order to protect the "sanctity of the oath.") In the federal courts, we rely on impeachment during cross-examination to deter parties from contradicting their prior statements to the court. Fed.R.Evid. 801(d)(1)(A); *see also* Fed.R.Evid. 613 (even prior inconsistent statements that are not under oath may be used for impeachment). Requiring prior judicial acceptance protects the truth-seeking function of the court, while preserving the court's integrity.

In this case, the Board cannot be judicially estopped unless the district court's acceptance of the agreed orders enjoining Wheeler and Stidham constituted judicial acceptance of the Board's prior allegations, even if the Board's actions against Teledyne contradict its earlier petitions for an injunction to the district court. The district court's acceptance of the agreed orders was not judicial acceptance of the Board's prior allegations against Stidham and Wheeler. We do not imply that judicial acceptance only occurs where a party ultimately prevails on the merits. "Rather, judicial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *Edwards*, 690 F.2d at 599 n. 5. There was no judicial acceptance in the agreed orders of

---

does not bar a party from contradicting itself, but from contradicting a court's determination that was based on that party's position.

**4.** Some courts have held that a party may avoid application of judicial estoppel if the prior position was the result of a mistake, inadvertence, or fraud. *See Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C.Cir.1980); *Johnson Serv. Co. v. TransAmerica Ins. Co.*, 485 F.2d 164, 175 (5th Cir.1973). The reasoning is that if the prior

position was false, the danger to the integrity of the courts is reversed, because a strict rule would force the court to continue to adopt a false position. The danger of creating these exceptions to the applicability of judicial estoppel is that they threaten to collapse the entire doctrine; a party inherently argues that a prior position was false if the new position contradicts it. However, we need not reach this question today.

any allegations against Stidham and Wheeler for two reasons: because the agreed orders contained no findings against Stidham and Wheeler, and because the district court's entry of the agreed orders did not constitute acceptance of them for purposes of judicial estoppel.

Teledyne relies on our decision in *Reynolds v. Commissioner of Internal Revenue*, 861 F.2d 469 (6th Cir.1988), to assert judicial estoppel, but the differences between this case and *Reynolds* actually illustrate why judicial estoppel does not apply to the Board. Unlike *Reynolds*, the agreed orders in this case contain no admissions or findings of law or fact. In *Reynolds*, the issue was whether the petitioner or the petitioner's former spouse was liable for the tax on a certain capital gain. *Id.* at 470. The Commissioner of Internal Revenue admitted in a bankruptcy court-approved stipulation in the first case against the wife, that the wife was liable for the tax, implicitly exonerating the husband. *Id.* at 471–72. In this case, the Board and the Union negotiated settlement stipulations in which Wheeler and Stidham did not admit that they had engaged in any misconduct under the Act. Judicial estoppel cannot apply without some decision or admission in the district court's agreed orders as to whether Stidham and Wheeler actually engaged in the alleged misconduct. *NLRB v. Markle Mfg. Co.*, 623 F.2d 1122, 1126–27 (5th Cir.1980).

▮ In addition, the stipulation in *Reynolds* was approved by a bankruptcy court in a bankruptcy proceeding, where the court had a duty to ensure that the agreement was fair and equitable, unlike an ordinary civil case. *Reynolds*, 861 F.2d at 473; *see also id.* at 475 (Kennedy, J., dissenting) (arguing that even a settlement approved in bankruptcy court would not constitute judicial acceptance). Here, the district court had no similar duty in accepting a settlement in lieu of considering the Board's original petitions under the Act. Settlements, even in the form of an agreed

order, ordinarily do not constitute judicial acceptance of whatever terms they contain. In *Reynolds*, the court stated, "When an ordinary civil case is settled, there is no 'judicial acceptance' of anyone's position and thus there can be no judicial estoppel in a later proceeding." 861 F.2d at 473; *see also Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C.Cir.1980) ("settlement neither requires nor implies any judicial endorsement of either parties['] claims or theories, and thus, a settlement does not provide the prior success necessary for judicial estoppel"). Teledyne offers no reason why we should make an exception here. These settlements did not constitute judicial acceptance of any factual allegations under the doctrine of judicial estoppel.

▮ In regard to Stidham, even if the district court had granted the injunction, the injunction would not constitute a finding that the unfair labor practice actually occurred. The grant of the injunction under section 10(j) of the Act means merely that there is "reasonable cause" to believe that an unfair labor practice occurred. *Gottfried v. Frankel*, 818 F.2d 485, 493–94 (6th Cir.1987) (under section 10(j), a court also must determine that temporary injunctive relief is just and proper). "Reasonable cause" to believe a position is not judicial acceptance of that position.[5]

▮ The parties here confuse the difference between judicial and other forms of estoppel. Teledyne asserts only that the Board's action challenging its discharge of Stidham and Wheeler is barred by judicial estoppel, but the Board construes Teledyne's brief to assert both equitable and collateral estoppel as well. Although each of these doctrines deals with the preclusive effect of previous legal actions, the similarity ends there. *See Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166–67 (4th Cir.1982) ("The circumstances under which judicial estoppel may appropriately be invoked are ... found where neither collateral estoppel nor equitable estoppel ... would apply.").

5. Of course, if the district court had made a finding of contempt against Wheeler, such a finding would constitute judicial acceptance of the Board's argument in the petition that Wheeler had violated the previous agreed order.

The difference between judicial and equitable estoppel stems from their different purposes. Judicial estoppel exists to "protect the *courts* 'from the perversion of judicial machinery'" through a party's attempt to take advantage of both sides of a factual issue at different stages of the proceedings. *Id.* (quoting *Edwards v. Aetna Life Insurance Co.*, 690 F.2d 595, 599 (6th Cir.1982)) (emphasis added). In contrast, equitable estoppel serves to protect *litigants* from unscrupulous opponents who induce a litigant's reliance on a position, then reverse themselves to argue that they win under the opposite scenario. *See Moser v. United States*, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951); *Edwards*, 690 F.2d at 598. A party may invoke equitable estoppel to prevent the opposing party from changing positions if (1) the party was an adverse party in the prior proceeding; (2) the party detrimentally relied on the opponent's prior position; and (3) the party would now be prejudiced if the opponent changed positions. *Edwards*, 690 F.2d at 598; *Konstantinidis v. Chen*, 626 F.2d 933 (D.C.Cir.1980). Equitable estoppel may apply regardless of judicial acceptance of the party's original position, because equitable estoppel protects litigants instead of the integrity of the courts. Judicial estoppel may apply regardless of detrimental reliance by the opposing party because it exists to protect the integrity of courts instead of the litigants.

Judicial estoppel also differs from the doctrine of collateral estoppel. Collateral estoppel conserves judicial resources by preventing a party from relitigating ultimate issues of fact that already have been resolved against that party. *Edwards*, 690 F.2d at 598–99. Collateral estoppel also preserves the integrity of the court because a court cannot make an inconsistent decision on a specific issue that it does not consider a second time. However, this protection of the court's integrity is incidental because collateral estoppel protects the court only in cases where the party is taking the same position on the same issue. *But see Bank of Heflin v. Landmark Inns of America, Inc.*, 604 F.2d 354 (5th Cir. 1979) (applies collateral estoppel in this situation, although the cited authority concerns judicial estoppel). In nearly a mirror image to collateral estoppel, judicial estoppel consistently protects the integrity of the court by estopping a party whenever it has previously persuaded a court to make a decision contrary to the party's current position. Judicial estoppel is not bounded by the limits of mutuality and finality that protect the parties in collateral estoppel. *See, e.g., Reynolds v. Commissioner of Internal Revenue*, 861 F.2d 469 (6th Cir. 1988).

The agreed orders entered previously by the court could not justify imposition of collateral estoppel because they did not constitute fully litigated and finally decided decisions on the merits. *Brown v. Felsen*, 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979). Indeed, the agreed orders expressly avoided making any decision at all.

To support the imposition of equitable estoppel, Teledyne would have to show that the Board previously had taken an inconsistent position, on which Teledyne had relied to its detriment. The allegations in the Board's petitions against Stidham and Wheeler were dropped pursuant to the agreed orders, which contained explicit nonadmission clauses. After the district court entered the agreed orders, Teledyne could not justifiably rely on allegations in the petitions that had preceded them.

### The Award of Backpay

Teledyne does assert the doctrine of equitable estoppel to argue that Wheeler and Stidham should not be awarded backpay after their reinstatement. The Board has recognized that an employer reasonably may rely on assertions of fact in a General Counsel complaint accusing individuals of unlawful conduct. *Markle Mfg. Co.*, 239 N.L.R.B. 1142, 1151 (1979) *enfd. as modified*, 623 F.2d 1122 (5th Cir.1980). Teledyne contends that if we enforce the Board's order reinstating Stidham and Wheeler, the award of backpay should be tolled until the judgment of the administrative law judge against Teledyne in this

case. *NLRB v. Markle Mfg. Co.*, 623 F.2d 1122, 1127 (5th Cir.1980).

In *Markle*, the Fifth Circuit tolled the award of backpay after the company was ordered to reinstate an employee, who had been discharged in violation of the Act. The Court held that where a previous consent order had been based on allegations of misconduct by the discharged employees, "the first order tolls any duty to reinstate and any concomitant liability for backpay until the second order is entered." *Id.* The Court stated that once the Board alleges that an employee has committed a violent act, the employer may rely on those allegations to discharge the employee until the allegations are disproved. *Id.* at 1127–28.

Although we agree that an employer may rely on allegations by the Board in a complaint, we do not believe that an employer may continue to rely on these allegations, even after the Board has resolved them by settlement. In this case, the agreed orders, which supplanted the previous assertions by the Board in its petitions to the district court, explicitly waived any factual or legal findings. Although the agreed orders stemmed from allegations of violations, they did not endorse those allegations. Thus, we disagree with the Fifth Circuit's characterization of such agreed orders as "based upon allegations of violence." As stated above, the Board's allegations in its petitions were subsumed in the later agreed orders, and Teledyne could not reasonably rely on them. The Board's complaint, on which the petitions to the district court were based, was resolved in a stipulated settlement on August 20, 1985. The stipulated settlement also explicitly waived any finding of fact or law beyond those needed to establish the Board's jurisdiction. In addition, it contained an explicit nonadmission clause by the Union.

Thus, by the time Teledyne discharged Stidham and Wheeler in early 1986, five months had elapsed since the Board's allegations against them had been resolved, and Teledyne could no longer reasonably rely on those allegations. Otherwise, the effect of the waivers of any findings and of the nonadmission clauses would be diluted. The primary advantage to negotiated agreed orders in these cases is that they provide a quick resolution to an immediate problem during a strike, ending any alleged violence or intimidation. In addition, these agreed orders allow parties to avoid the expense and delay of a full adjudication and the risk of defeat. Unions and management will have greater difficulty reaching quick agreement in these pressured negotiations if the result of those negotiations will necessarily affect the award of backpay in later litigation over potential discharges.

Also, tolling an award of backpay in this situation would conflict with the reasoning of the Supreme Court in *NLRB v. Burnup & Sims*, 379 U.S. 21, 85 S.Ct. 171, 13 L.Ed.2d 1 (1964). In *Burnup & Sims*, the Court held that employees were entitled to backpay if they were discharged in violation of the Act, regardless of any good faith belief of the employer that the discharges were warranted under the Act. The Court stated that the "controlling" factor in the analysis was not the employer's state of mind, but the tendency of the employer's conduct to weaken or destroy protected rights. *Id.* at 23–24, 85 S.Ct. at 172–73. If an employee's backpay is limited upon reinstatement after an illegal discharge because of a position taken by the Board, then it is the employee who suffers for the mistakes of the Board. The result will discourage employees from exercising their rights under the Act. Although the employer may not be culpable where it relied on the Board's earlier position in good faith in discharging an employee, the Court in *Burnup & Sims* rejected by a vote of eight to one Justice Harlan's related approach to make the award of backpay dependent upon the reasonableness of the employer's decision to discharge the employee. *See id.* at 24, 85 S.Ct. at 173 (Harlan, J., concurring in part and dissenting in part). *Cf. NLRB v. J.H. Rutter–Rex Mfg. Co.*, 396 U.S. 258, 90 S.Ct. 417, 24 L.Ed.2d 405 (1969) (even if the amount of backpay award is increased by the Board's failure to act promptly in violation of the Administrative Procedure Act, 5 U.S.C.

§ 1005(a), enforcement of the full backpay remedy is appropriate). To deny backpay to a reinstated employee in this case conflicts with the rule of *Burnup & Sims* that the culpability of the employer is not the relevant question. Thus, we decline to toll the award of backpay to Stidham and Wheeler.

### The Merits of the Discharges

 Aside from the arguments of estoppel, Teledyne argues that the administrative law judge erred in deciding that Teledyne committed an unfair labor practice by discharging Stidham and Wheeler. In *NLRB v. Burnup & Sims*, 379 U.S. 21, 23, 85 S.Ct. 171, 172, 13 L.Ed.2d 1 (1984), the Court outlined a three-step analysis for determining whether an employer committed an unfair labor practice by refusing to reinstate and by discharging an employee because of strike-related activity. Only the third step of the *Burnup & Sims* test is at issue here. For purposes of this appeal, the parties assume the first two steps: that Teledyne discharged Wheeler and Stidham for conduct that took place during a protected strike, and that Teledyne discharged its employees in the good faith belief that they had committed misconduct. *See id.* In the third step, the Board must show that the employees did not actually engage in the alleged misconduct. *Id.; Schreiber Mfg. Co. v. NLRB*, 725 F.2d 413, 415–16 (6th Cir.1984). Under *Burnup & Sims*, even if the employer honestly believes that the employee engaged in misconduct, the employer still violates the Act if the Board proves that the employees were innocent. "Otherwise, the protected activity would lose some of its immunity since the example of employees who are discharged on false charges would or might have a deterrent effect on other employees." *Burnup & Sims*, 379 U.S. at 23, 85 S.Ct. at 172–73.

The Board's determination that Wheeler and Stidham did not commit the alleged misconduct is a factual finding and, as such, is conclusive if "substantial evidence on the record as a whole" supports it. 29 U.S.C. § 160(e). We hold that substantial evidence supports the Board's finding that the alleged misconduct by Wheeler did not

occur. Teledyne contends that Wheeler's discharge was lawful because on July 13, 1984, Wheeler allegedly struck the car of employee Russell Swallow with his picket signs and blocked a tractor-trailer truck from entering Teledyne's parking lot gate for a period of approximately one minute. If Wheeler struck a vehicle seeking to gain access to the employer's facility, he could be discharged for strike misconduct. *NLRB v. Hartmann Luggage Co.*, 453 F.2d 178 (6th Cir.1971); *see Clear Pine Mouldings, Inc.*, 268 N.L.R.B. 1044, 1046 (1984) (The standard is whether their conduct "under the circumstances existing ... may reasonably tend to coerce or intimidate employees in the the exercise of rights protected under the Act."). However, Teledyne introduced no evidence that Wheeler actually struck the car. Without any countervailing evidence, Wheeler's denial under oath that he struck the car easily surpasses the substantial evidence standard.

Wheeler also denied that he blocked the tractor-trailer truck from entering Teledyne's parking lot. The Teledyne Personnel Director, Cecil Cummings, testified that he saw Wheeler block the truck, and Teledyne introduced into evidence a videotape of the blocking of the truck, in which Cummings identified the driver of the car blocking the truck as Wheeler. The administrative law judge viewed the videotape and found that it was not possible to identify the driver as Wheeler. The administrative law judge also found Wheeler to be a more credible witness than Cummings. Our review of the credibility of witnesses also is "narrow." *Electrical Workers Local 948 v. NLRB*, 697 F.2d 113, 117 (6th Cir.1982). *In Electrical Workers*, we stated, "The Board's choice between conflicting testimony will not be set aside simply because this court 'would justifiably have made a different choice had the matter before it been *de novo.'"* *Id.* (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1950)). We affirm the credibility determination of the Board if "the Board's conclusions are reasonable in light of the proven facts." *NLRB v. Com-*

*general Corp.,* 684 F.2d 367 (6th Cir.1982). The Board's decision to credit the testimony of Wheeler over Cummings was not unreasonable.

We also affirm the Board's finding that Stidham did not engage in strike misconduct. Teledyne contends that Stidham was discharged because she followed nonstrikers home from the plant and threatened them, and because she blocked the entrance to the Teledyne plant.[6] Again, the alleged conduct, if proved, could be sufficiently grave to warrant removing the protection of the Act from Stidham. The Board has stated:

> [T]he existence of a 'strike' in which some employees elect to voluntarily withhold their services does not in any way privilege those employees to engage in other than peaceful picketing and persuasion. They have no right, for example, to threaten those employees who, for whatever reason, have decided to work during the strike, to block access to the employer's premises and certainly no right to carry or use weapons or other objects of intimidation.

*Clear Pine Mouldings, Inc.,* 268 N.L.R.B. 1044, 1047 (1984). In this case, the Board found that the General Counsel had succeeded in proving that Stidham did not commit the acts which could have warranted discharge.

The Board's decision regarding Stidham again came down to a credibility determination between opposing witnesses. "Deference to the Board's factual findings is particularly appropriate where the 'record is fraught with conflicting testimony and essential credibility determinations have been made.'" *Tony Scott Trucking v. NLRB,* 821 F.2d 312, 315 (6th Cir.1987) (quoting *NLRB v. Nueva Engineering,* 761 F.2d 961, 965 (4th Cir.1985)), *cert. denied,* 484 U.S. 896, 108 S.Ct. 230, 98 L.Ed.2d 188 (1987). Here, two carloads full of striking workers followed a group of nonstriking workers to the home of a nonstriking worker, Linda Golden, to engage in intimidation.

However, Stidham was not in the two carloads. Stidham appeared in front of Golden's home in a separate car while the intimidation was going on. There is conflicting testimony as to whether Stidham shouted a threat at Golden's group or otherwise supported the other striking workers. This evidence does not condemn Stidham so strongly that the administrative law judge's decision to exonerate her lacks substantial evidence to support it.

In regard to the Stidham's second instance of alleged misconduct—blocking access to the plant—Teledyne based its case on the testimony of Cecil Cummings and a videotape. However, Cummings admitted that he could not identify Stidham in the videotape, and he contradicted himself as to whether he was present when the alleged blocking of access took place. Here too, the factual finding of the administrative law judge that Stidham did not commit strike misconduct is supported by substantial evidence.

Thus, we decline to apply estoppel, to toll the award of backpay, or to overturn the factual findings of the administrative law judge. The order of the Board is enforced.

---

**6.** Teledyne appears to have abandoned on appeal its argument before the Board and the administrative law judge that Stidham engaged

in misconduct by shouting threats at nonstriking employee Bobby Kirby.