**In re BROADVIEW LUMBER COMPANY, INC., Debtor.**

**Bankruptcy No. 91–30593–SW.**

United States Bankruptcy Court, W.D. Missouri.

March 6, 1992.

Norman Rouse, Collins, Webster & Rouse, Joplin, Mo., for debtor.

Brent D. Green, Springfield, Mo., for creditor.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

### I. INTRODUCTION AND STATEMENT OF FACTS

This is an involuntary case. Petitioning creditors and the alleged debtor, Broadview Lumber Company, Inc. ("Broadview Lumber"), have filed cross-motions for summary judgment. The main issue is whether the claim of one of the petitioning creditors is barred by the doctrine of accord and satisfaction. This Court has core jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2). Based on the reasons set forth below, I find that the petitioning creditors' motion for summary judgment should be sustained, and that the motion of Broadview Lumber should be denied. Therefore, an order for involuntary relief will be entered.

Broadview Lumber had been in business for over 85 years before it decided to close its doors in January, 1991, at which time it had over 200 creditors. Based upon the analysis of its accountants, Broadview Lumber determined that in a liquidation its creditors would receive 16.6 percent of their outstanding claims. Accordingly, Broadview Lumber sent to each of its creditors a check representing 16.6 percent of the amount owed according to its own records. Along with each such check Broadview Lumber sent a letter stating that negotiation of the enclosed instrument would constitute a full release of Broadview Lumber, its management, and others, from any further liability.

The majority of Broadview Lumber's creditors cashed these checks without objection to the release provisions in the letter.

However, two of the petitioning creditors *did not* accept the proposed release and settlement, and returned the checks. These two creditors are Walter M. Fields, and C & S Lumber Company, Inc. Broadview Lumber admits the validity of the claims of these two creditors, but disputes the amounts of those claims.

Another petitioning creditor, Robert C. Melloway ("Melloway"), cashed the money order sent to him, by Broadview Lumber, but added a restrictive endorsement: "Deposited under protest with recourse. Robert C. Melloway." Melloway's claim is for the balance due on a March, 1987 Promissory Note in the original amount of $14,257.80 and signed by Richard T. Manfield, as President of Broadview Lumber. The status of Melloway as a petitioning creditor is the issue now before this Court.

### II. LEGAL ANALYSIS

Broadview Lumber qualifies as a debtor under section 109(b) of the Bankruptcy Code. 11 U.S.C. § 109(b). For creditors to petition successfully for involuntary bankruptcy under 11 U.S.C. § 303, a Court must determine that the creditors have standing and that the alleged debtor generally has not been paying its debts as they become due. Where as here, the number of creditors exceeds twelve, at least three qualified creditors must join in the filing of the involuntary petition. 11 U.S.C. § 303(b)(2).

■ There is no dispute that Broadview Lumber is not generally paying its debts as they come due. The real issue is whether there are at least three qualified petitioning creditors which hold claims against Broadview Lumber that are not contingent as to liability or the subject of a bona fide dispute, as required by section 303(b)(1). Broadview Lumber admits that Walter M. Fields and C & S Lumber each hold a claim against it, but disputes a portion of the claims allegedly amounting to $19,456.80 and $5,000.75 respectively. In order to disqualify a creditor's claim for the purpose of meeting the involuntary petition requirements, the bona fide dispute must exist as to the validity of an entire claim, not merely a portion of it. *In re Ross*, 63 B.R. 951, 966 (Bankr.S.D.N.Y.1986) (where liability as to a claim is fixed, there is no requirement that a petitioner's claim be liquidated in amount).

■ Thus, the Court need only find one other creditor to meet the requirements of section 303. By placing a restrictive endorsement on Broadview Lumber's money

offered as full and final settlement of its claim, Robert C. Melloway reserved his right to assert the rest of his claim and therefore qualifies as the third petitioning creditor.

Broadview Lumber contends that the restrictive endorsement does not cure the fact that he accepted the instrument with knowledge that it was offered as full and final settlement. Thus, Broadview Lumber argues, the money order was accepted as a valid accord and satisfaction of Melloway's claim. Broadview Lumber further bolsters its argument that Melloway accepted the settlement payment by going to "great lengths" in order to obtain the payment. It appears that the first check offered to Melloway was returned to Melloway by the bank as the check had been written from a closed account. Melloway sent a letter to Broadview Lumber's attorney indicating that he wanted the check covered. Broadview promptly provided Melloway with a money order in the amount of $869.33 purporting to represent 16.6 percent of his claim.

Notwithstanding his attempts to obtain a valid instrument offered as a settlement of his claim, Melloway did not "accept" the money order as a full and final settlement. The letter from Broadview to Melloway expressly stated that *negotiation* of the instrument *constituted acceptance* of a full and final settlement, or an accord and satisfaction. The letter, which was executed as part of the same transaction, modifies or affects the terms of the instrument. See Mo.Rev.Stat. § 400.3–119 (1986). The money order was not negotiated until it was delivered to Melloway's bank with his restrictive endorsement. Mo.Rev.Stat. § 400.3–202(1) (1986). A restrictive endorsement may be conditional. Mo.Rev.Stat. § 400.3–205 (1986). Such a condition may include a reservation of rights as contemplated by Mo.Rev.Stat. § 400.1–207 (1986).

Section 1–207 of Missouri's Uniform Commercial Code ("U.C.C. § 1–207") provides as follows:

A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as "without prejudice", "under protest" or the like are sufficient.

Mo.Rev.Stat. § 400.1–207 (1986).

Despite this provision's clear applicability to bar an alleged accord and satisfaction, it is Broadview's position that Melloway's claim has been compromised and settled. Broadview could find support for its position in the case law of many other jurisdictions. *See* Anderson, *Accord and Satisfaction: An Attempted Reservation of Rights*, 46 Journal of the Missouri Bar 113, 115 (March 1990).

Missouri, however, has chosen to follow the minority, but better-reasoned, position that the uniform version of U.C.C. § 1–207 applies to accord and satisfaction transactions. Therefore this provision modifies the traditional outcome to permit the creditor to keep the money without losing his claim for the remaining amount alleged to be due. *See Majestic Bldg. Materials, Inc. v. Gateway Plumbing, Inc.*, 694 S.W.2d 762 (Mo.Ct.App.1985).

In *Majestic*, a supplier sued on an account to recover $2,200 for gravel sold to defendant plumbing company. The plumbing company defended on the basis that it had forwarded a "full payment" check to the supplier with a notation on the back of the check stating the instrument was "payment in full and in full and final settlement of all claims and demands ... against Gateway Plumbing ..." (Id. at 763).

Prior to negotiating the check, the supplier added the following notation to its endorsement:

This check is accepted under protest and with full reservation of rights to collect the balance owing of $2,200.28. (Id. at 764)

The trial court held that U.C.C. § 1–207 was inapplicable to the "full payment" check, concluding it operated as a valid accord and satisfaction. The Court of Appeals specifically reversed on this issue, holding that the trial court erred as a matter of law. (Id. at 766). Thus, the supplier

was entitled to recover the balance of the claim, the reasonableness of which was not disputed.

Broadview Lumber has not disputed the reasonableness of Melloway's claim, which represents the balance owing on a Promissory Note originally in the amount of $14,257.80. Broadview Lumber merely disputed Melloway's negotiation of the "full payment" money order. As this Court holds that Melloway's negotiations of the money order containing a restrictive endorsement pursuant to U.C.C. § 1–207 bars an accord and satisfaction, Broadview Lumber does not have a bona fide dispute as to Melloway's claim. Therefore, the Court concludes that the petitioning creditors have met all the requirements of 11 U.S.C. § 303 for an involuntary petition.