**In re Samuel OWENS & Odine Owens, Debtors.**

**Bankruptcy No. 92–13619.**

United States Bankruptcy Court, E.D. Tennessee.

Nov. 2, 1992.

Mark E. Whittenburg, Copeland & Whittenburg, Chattanooga, TN, for debtors.

C. Douglas Williams & W. Thomas Bible, Jr., Stophel & Stophel, Chattanooga, TN, for petitioning creditors.

## MEMORANDUM

RALPH H. KELLEY, Chief Judge.

R.H. Spear, Douglas H. Spear, and The Spear Group, Inc., filed an involuntary bankruptcy petition against the debtors, Mr. and Mrs. Owens. In their answer to the involuntary petition, the Owens alleged that the creditors were not qualified to file the involuntary petition because their claims are subject to bona fide disputes. The question came on for trial. The court heard the testimony of Mr. Owens and Mr. R.H. Spear. The parties also submitted several exhibits.

The Spear Group, Inc., was in the business of selling recreational vehicles and parts. R.H. Spear and Doug Spear were stockholders of The Spear Group. The Spear Group, R.H. Spear, and Doug Spear agreed to sell the business to Owens Truck Sales, Inc.

Mr. Owens signed the sale contract as president of Owens Truck Sales. Mr. and Mrs. Owens also signed the sale contract as individuals. Mr. and Mrs. Owens signed three notes for the purchase price the same way. One note was to R.H. Spear, one was to Doug Spear, and the third was to The Spear Group.

The sale contract says that the payments to R.H. Spear and Doug Spear are for their covenants not to compete with the new owner.

Paragraph 5 of the sale contract included several representations and warranties. It provided that all of the machinery and equipment being transferred was in good working order. It provided that the seller was not in violation of any city ordinances or the rules and regulations of any regulatory body which regulated the business. It provided that the financial information presented to the buyer was true and correct and a fair and accurate representation of the company's operations for the periods covered by the information, in particular the period ending December 31, 1989.

Paragraph 9 of the contract provided:

Seller Stockholders shall without cost to Buyer make themselves available at reasonable times to assist the Buyer in learning the operation of the Business. It is agreed that Douglas Spear will not work more than forty (40) hours per week during the first week following the closing of the transaction and no more than thirty (30) hours per week during the second week and from that time forward to be on call by telephone for a very limited time with the cause [calls?] to be limited to a very small amount of time following the second week from the closing.

Paragraph 12 of the contract provided:

The Buyer shall enter into a lease with R.H. Spear covering the real property and improvements currently used by Spear Camping Center ... with said lease to be a lease/purchase. The purchase shall be based on the fair market value of the property as agreed to between the parties....

R.H. Spear and Owens Truck Sales entered into a lease of the real property. The lease is dated the same as the sale contract,

July 10, 1990. Mr. Owens signed the lease as president of Owens Truck Sales, Inc.

Paragraph 17 of the lease provided:

At any time during the term of this lease, Tenant shall have the option to purchase the premises from Owner at a purchase price which Tenant and Owner, in good faith, agree to be equal to the fair market value of the premises at the time of purchase, so long as Tenant is not in default under this lease. Such purchase shall include such other terms as the parties shall approve....

The Owens have alleged several disputes over the creditors' claims under the promissory notes and the lease. They allege that:

(1) Items that were supposed to be included in the sale were not included and items were removed or substituted after the sale contract was signed;

(2) The mileage on a truck that was an important part of deal was understated;

(3) The Spears induced the Owens to hire an employee when the Spears should have known that the employee had been stealing from the business;

(4) The financial statements furnished before the sale were wrong since they included income from another business;

(5) After the sale the Owens learned that part of the land was zoned residential and the buildings lapped over onto the land zoned residential;

(6) Doug Spear was not available to consult with the Owens as promised;

(7) R.H. Spear violated the option to purchase the land and buildings by not acting in good faith to agree on the fair market value of the property.

■ Section 303 of the Bankruptcy Code provides that an involuntary petition can be filed by a creditor whose claim is not subject to a bona fide dispute. 11 U.S.C.A. § 303(b) (West Supp.1992). The courts generally agree on the meaning of bona fide dispute. A claim is subject to a bona fide dispute if the debtor has a legitimate basis for denying liability. *In re Lough,* 57 B.R. 993 (Bankr.E.D.Mich.1986), *accord Bartmann v. Maverick Tube Corp.,* 853 F.2d 1540 (10th Cir.1988); *B.D.W. Associates, Inc. v. Busy Beaver Bldg. Centers, Inc.,* 865 F.2d 65 (3d Cir.1989).

In other words, a claim is subject to a bona fide dispute if the debtor has a good legal reason for denying liability. This raises two basic questions. If the disputed facts were decided in the debtor's favor, would the law give the debtor a reason for not paying the claim? If the facts are not disputed, does the law give the debtor a ground for denying liability?

Mr. Owens testified that Doug Spear stayed in town for only about ten days after the sale and then moved to Florida, and that he had trouble finding him for a while after he moved to Florida. R.H. Spear testified that Doug Spear was available for the whole time that he was supposed to be available. Doug Spear did not testify. Thus, the witnesses directly contradicted each other on the question of whether Doug Spear was available to consult with the Owens as promised. The contract is vague on exactly how much consulting Doug Spear was expected to do.

The sale contract provided that the machinery and equipment was in good working order. Mr. Owens testified that he had to replace several adding machines and typewriters. R.H. Spear testified that the business had been operating with the machinery and equipment that was sold, but it was used equipment. Of course, he did not contradict Mr. Owens' testimony that adding machines and typewriters had to be replaced.

Mr. Owens testified that a truck included in the sale was certified to have about 26,000 miles on it, but an employee told him that it had 126,000. Mr. Owens testified that the truck had transmission trouble and that it looked like it had more than 26,000 miles on it. R.H. Spear testified that the mileage was certified to him when the business bought the truck, and that the employee has denied saying that the truck had 126,000 miles on it, instead of 26,000.

The sale contract warranted that the business was not in violation of any city ordinances or any rules and regulations. Mr. Owens testified that he did not learn until almost a year after the sale that part

of the property was in a residential zone. He found out that the employees did not open the back doors to the shop because the neighbors in a residential neighborhood complained about the noise. He checked the local records and to him it looked like additions had been made to the buildings without permits. He had inspected the business before buying it in the summer of 1990, but he apparently did not notice that the back doors to the shop were kept closed even in hot weather. R.H. Spear testified that everything built on the property was permitted and that the commercial use was grandfathered in since it existed before the residential zoning.

Mr. Owens was interested in buying the land and buildings under the purchase option in the lease. The offer he presented was by him and Mrs. Owens instead of Owens Truck Sales, which was the lessee. R.H. Spear asked $300,000 for the property. He based this on an appraisal done by American National Bank. Mr. Owens did not agree with this value. He offered to pay for two appraisers, one for him and one for the Spears, to find out the fair market value of the land. R.H. Spear refused. He may have said that he did not want to sell the property after all.

R.H. Spear testified that Owens Truck Sales was in default under the lease and could not exercise the option, but Mr. Owens denied any default.

Mr. Owens testified that after the sale contract was signed the Spears removed a desk and the copy machine, which he thought were included in the sale. The sale contract included an inventory. Mr. Owens admitted that the copier was not on the inventory. He testified that he was shown around the business by Doug Spear. Doug Spear had been operating the business before the sale but had shut it down or almost shut it down. R.H. Spear was living in Florida at the time. Mr. Owens testified that he did not see the inventory list until the time the sale contract was signed and did not have a chance to compare it to the machinery and equipment that were on the premises. R.H. Spear testified that the copier and the executive desk, his desk, were not included in the sale.

The sales agreement warranted the accuracy of the financial information that was furnished to the Owens before the sale. Mr. Owens testified that after the sale he kept getting calls at the business on a separate telephone line. The calls were for Doug Spear's wife who apparently operated a physical therapy business. He suspected that the financial statements he saw included income from her business. He suspected this because his income from the business was much lower than what the financial statements had shown. In a deposition for another lawsuit Mr. Owens had testified that general economic conditions caused the business to decline. At this hearing Mr. Owens testified that general economic conditions were one factor in the failure of the business.

The court sees several bona fide disputes regarding the creditors' claims.

There is a bona fide dispute over whether Doug Spear was available to help the Owens learn the business as promised in the sale contract.

There is a bona fide dispute over whether the machinery and equipment were in good working order as promised in the sale contract.

There is a bona fide dispute over whether the business was in violation of the zoning laws. There may also be a bona fide dispute over whether the creditors had a duty before the sale to reveal that part of the land was zoned residential.

There is a bona fide dispute over the mileage on the truck. The question of what an employee said about the mileage on the truck is just a part of the dispute. The facts are not undisputed.

There is a bona fide dispute over whether R.H. Spear acted in good faith with regard to the purchase option in the lease. The creditors would like for the court to say that there is no dispute because the offer was not in the name of the lessee, Owens Truck Sales. But this is merely part of the dispute; it was a problem that might not have made a difference. Likewise, there is

a factual dispute over whether Owens Truck Sales had defaulted under the lease and therefore could not exercise the option. The creditors also raised the issue of what kind of damages, if any, there might be for violating the option. Again, this is just a part of the dispute; it does not remove the dispute.

However, this bona fide dispute may be irrelevant. Owens Truck Sales was the lessee; the Owens did not sign the lease separately. Thus, the lease may not give R.H. Spear a claim against Mr. or Mrs. Owens personally that can be used to force them into involuntary bankruptcy. Likewise, the alleged violation of the option might give Owens Truck Sales, but not Mr. and Mrs. Owens, a counterclaim against R.H. Spear. In any event, if the lease somehow gives Mr. Spear a claim against Mr. and Mrs. Owens personally, the claim is subject to a bona fide dispute.

With regard to the financial statements, the court does not see a bona fide dispute at this point. Mr. Owens only suspects that they were wrong without any real evidence to show that they were. The court also does not see a bona fide dispute with regard to the desk and copier that were removed. The Owens and Owens Truck Sales are likely to be bound by the written contract, including the inventory list.

█ The statute says that a claim cannot be used to force the debtor into involuntary bankruptcy if the claim is subject to a bona fide dispute. Congress added this requirement so that a creditor with a disputed claim could not use involuntary bankruptcy, or the threat of it, to force a debtor to pay despite the dispute. *See In re Henry,* 52 B.R. 8, 9–10 (Bankr.S.D.Ohio 1985).

█ This policy applies when the debtor raises a defense that might completely bar the creditor's claim. But suppose the disputes raised by the debtor can only reduce the creditor's claim; they cannot completely defeat the creditor's claim. Is a claim

subject to a bona fide dispute only if the dispute may defeat or offset the whole claim?

There may be a distinction inherent in the meaning of "bona fide dispute." Some disputes may be so minor that they should not protect the debtor from involuntary bankruptcy. On the other hand, the court does not agree with an absolute rule that the entire claim must be in dispute. *In re Broadview Lumber Co., Inc.,* 137 B.R. 775 (Bankr.W.D.Mo.1992). The statute does not say that the entire claim must be is dispute. In some cases a rule that the entire claim must be disputed would frustrate the purpose of the statute. Whether a claim is subject to a bona fide dispute is a matter of degree. The courts will have to work out the rules by deciding individual cases. *See Rimell v. Mark Twain Bank (In re Rimell),* 946 F.2d 1363, 22 Bankr.Ct. Dec. 233, 25 Collier Bankr.Cas.2d 1453 (8th Cir.1991); *In re Busick,* 831 F.2d 745 (7th Cir.1987); *In re West Side Community Hosp., Inc.,* 112 B.R. 243 (Bankr.N.D.Ill. 1990).[1]

The court will not attempt to draw a definite line or make a definition. Suffice it to say that in this case the creditors' claims under the sale contract are subject to substantial bona fide disputes that prevent the claims from being used to force the Owens into bankruptcy. The court will enter an order dismissing the involuntary petition.

---

**1.** It may be easier to deal with this problem when deciding whether the debtor is generally paying its debts as they come due. Debts subject to a bona fide dispute do not count, and bona fide dispute might be defined differently under § 303(h). 11 U.S.C.A. § 303(h)(1) (West Supp.1992).