In re Harriet RIMELL, Debtor.

Harriet RIMELL, Appellant,

v.

MARK TWAIN BANK; First Bank; and Pioneer Bank, Appellees.

In re Albert RIMELL, Debtor.

Albert RIMELL, Appellant,

v.

MARK TWAIN BANK; First Bank; and Mercantile Bank, N.A.

No. 90–3054.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1991.

Decided Oct. 15, 1991.

Bernhardt W. Klippel, III, Clayton, Mo., for appellants.

Larry E. Parres, Mark V. Bossi, David A. Warfield, St. Louis, Mo., for appellees.

Before McMILLIAN and FAGG, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Albert and Harriet Rimell appeal the district court's affirmance of orders made by the bankruptcy court.[1] We affirm the district court[2] in all respects.

## I. BACKGROUND

Mark Twain Bank and First Bank filed involuntary bankruptcy petitions against Harriet Rimell. These two banks, along with two additional banks, also joined in involuntary bankruptcy petitions against Albert Rimell and three other individuals.[3] The petitions were based on loans the banks made to various entities with which the debtors were associated. At least one of the five debtors personally guarantied each of the loans.

The petitions were consolidated into one proceeding before the bankruptcy court. The debtors argued that the banks could not institute involuntary proceedings because the loans were subject to a bona fide dispute. More specifically, the debtors argued the loans were not due because the banks had orally agreed that, upon Albert Rimell's request, the terms of the loans would be modified in a variety of ways to allow the debtors more time to repay their obligations. Harriet Rimell, in addition to joining in this argument, also asserted that because she had more than twelve creditors, the Bankruptcy Code (hereinafter "the Code") required at least three creditors to petition for her forced entrance into bankruptcy.

The bankruptcy court determined there was insufficient evidence to show that the parties ever agreed that the terms would be automatically modified upon Albert Rimell's request. *Rimell*, 111 B.R. at 258–59. In counting Harriet Rimell's creditors, the bankruptcy court ultimately held that she had eight creditors; it rejected the remaining sixteen proffered creditors because, in the words of the district court, "1) three did not hold claims against Ms. Rimell as of the filing date; 2) two were 'insiders' of Ms. Rimell; and 3) eleven re-

1. The Honorable Barry S. Schermer, United States Bankruptcy Judge for the Eastern District of Missouri. Judge Schermer's opinion is reported as *In re Rimell*, 111 B.R. 250 (Bankr. E.D.Mo.1990).

2. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri. Judge Limbaugh's decision is reported as *In re Rimell*, 121 B.R. 253 (E.D.Mo.1990).

3. The other three debtors did not appeal the bankruptcy court's orders to the district court and are not parties to this appeal. For ease of discussion, the quintet will be referred to collectively as "the debtors."

ceived unauthorized post-petition payment of their prepetition claims." *Rimell*, 121 B.R. at 257.

The Rimells appealed to district court; at some time prior to the district court's decision, Pioneer Bank joined the involuntary petition against Harriet Rimell. The district court affirmed the bankruptcy court's decision that the loans were not subject to a bona fide dispute and further determined that the number of Harriet Rimell's creditors was moot because Pioneer Bank joined the petition as the third creditor.

## II. DISCUSSION

### A. The Existence of a Bona Fide Dispute

The Code allows an involuntary case to be commenced when three or more entities holding claims against the debtor file a petition so long as those claims are "not contingent as to liability or the subject of a bona fide dispute." 11 U.S.C. § 303(b)(1) (1988). The Code does not define a "bona fide dispute" and thereby leaves the term's meaning to judicial determination.

■ This circuit has never had occasion to define the term. Our efforts to do so on this occasion are guided by the prior efforts of other circuits. We note that the three circuits that have addressed this issue have been heavily persuaded by the reasoning contained in *In re Lough*, 57 B.R. 993 (Bankr.E.D.Mich.1986), and have adopted substantially similar tests for determining the existence of a bona fide dispute. Both the Seventh and the Tenth Circuits have stated that the proper standard requires the bankruptcy court to "determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt." *Matter of Busick*, 831 F.2d 745, 750 (7th Cir.1987); *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1544 (10th Cir.1988) (quoting *Busick*). The Third Circuit, relying on the Seventh Circuit's decision in *Busick*, has indicated that a bona fide dispute exists if there are " 'substantial' factual and legal questions raised by the debtor" bearing upon the debtor's liability. *B.D.W. Assoc. v. Busy*

*Beaver Building Centers, Inc.*, 865 F.2d 65, 66–67 (3d Cir.1989) (citing *Busick*, 831 F.2d at 750). Because we agree with the Seventh Circuit that this approach best effectuates Congress' intent, *see Busick*, 831 F.2d at 749, we also adopt this objective inquiry to determine whether a bona fide dispute exists.

■ In applying this standard, the petitioning creditor must establish a prima facie case that no bona fide dispute exists. Once this is done, the burden shifts to the debtor to present evidence demonstrating that a bona fide dispute does exist. *Bartmann*, 853 F.2d at 1544. Because the standard is objective, neither the debtor's subjective intent nor his subjective belief is sufficient to meet this burden. *Id.* The court's objective is to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute. *Id.* This does not mean that the bankruptcy court is totally prohibited from addressing the legal merits of the alleged dispute; indeed, the bankruptcy court may be required to conduct a limited analysis of the legal issues in order to ascertain whether an objective legal basis for the dispute exists. *Busick*, 831 F.2d at 750. Finally, because the determination as to whether a dispute is bona fide will often depend (as it did in this case) upon an assessment of witnesses' credibilities and other factual considerations, the bankruptcy court's determination in this regard is a factual finding that may be overturned on appeal only if it is clearly erroneous. *See* Bankruptcy Rule 8013.

■ In the case at bar, the bankruptcy court conducted the inquiry we now hold to be appropriate. Specifically, the bankruptcy court examined the loan documents proffered by the banks and noted that the parties did not dispute "the amounts due, the genuineness or the terms of the guarantees, or the effect of their terms." *Rimell*, 111 B.R. at 257. The court then afforded the debtors an opportunity to present evidence demonstrating that there was an additional, oral agreement that allowed the debtors to change the loans'

terms at will in order to facilitate payment. After reviewing the evidence, the bankruptcy court concluded that "the parties did not, either orally or through prior course of dealing, agree to alter, extend or modify the existing written contractual terms on any of the loans in the instant case. Given that the parties did not agree to such terms, it follows that there could be no bona fide dispute." *Id.* at 259. We have reviewed the record and do not believe the bankruptcy court's findings are clearly erroneous; hence, we affirm the determination that the banks' claims were not subject to a bona fide dispute.

### B. The Counting of Harriet Rimell's Creditors

Although an involuntary case generally requires three or more creditors to join the petition, the Code requires only one creditor to request involuntary proceedings if the debtor has less than twelve creditors. 11 U.S.C. § 303(b)(2) (1988). It does not appear that the bankruptcy court erred in classifying Harriet Rimell's creditors and concluding that she had less than twelve creditors; however, we do not address this issue in detail because we agree with the district court that Pioneer Bank's joinder in the petition renders this issue moot.

The Code specifies that "a creditor holding an unsecured claim that is not contingent ... may join in the petition with the same effect as if such joining creditor were a petitioning creditor...." *Id.* § 303(c). The joining creditor must not have been an original party to the petition and the joinder must take place before "the case is dismissed or relief is ordered." *Id.*

Pioneer Bank joined the petition filed by Mark Twain Bank and First Bank within the time required by § 303(c). Therefore, Pioneer Bank is to be treated as if it had joined the petition *ab initio*, thereby increasing the effective number of petitioning creditors to three. Consequently, it no longer matters how many creditors were needed to join the petition. 2 *Collier on Bankruptcy* ¶ 303.33 (15th ed.1979).

### III. CONCLUSION

The bankruptcy court's determination that the banks' claims were not subject to a bona fide dispute was not clearly erroneous. The number of Harriet Rimell's creditors is moot due to Pioneer Bank's joinder in the involuntary petition originally filed by First Bank and Mark Twain Bank. Consequently, we affirm the district court's affirmance of the bankruptcy court's decisions on these matters.