**In re COHN–PHILLIPS, LTD., Debtor.**

**Bankruptcy No. 95–25626.**

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

March 4, 1996.

Stephen G. Test, Virginia Beach, VA, for debtor.

Jane B. Wrightson, Portsmouth, VA, for creditor.

## MEMORANDUM OPINION & ORDER

STEPHEN C. ST. JOHN, Bankruptcy Judge.

This case comes before the Court upon the motion of Cohn–Phillips ("debtor") to dismiss this involuntary bankruptcy petition filed by Marina Shores, Ltd. ("Marina Shores"), Larry Griggs ("Griggs"), G.M.H. Interiors ("GMH"), and Portfolio Magazine ("Portfolio") (collectively referred to as "Petitioning Creditors"). After reviewing the evidence, stipulated facts and the arguments of counsel, the Court finds as follows.

### FINDINGS OF FACT

In 1990, the debtor leased and operated a restaurant on certain leasehold premises held by Marina Shores. Subsequently, the debtor and Marina Shores became embroiled in litigation over the lease. While this litigation ensued, the debtor continued to operate the restaurant. In June 1993, the debtor and Sun Realty, Inc. ("Sun Realty") executed a management agreement ("Management Agreement").[1] Pursuant to the Management Agreement, Sun Realty operated the restaurant and became solely responsible for all obligations and expenses relating to the restaurant. In September 1993, the debtor submitted a claim of approximately $188,000.00 to arbitration against Sun Realty founded on its allegations that Sun Realty breached the Management Agreement.

In the arbitration proceeding, the debtor submitted a summary of expenses ("Arbitration Summary") incurred by Sun Realty in

---

1. Gale Levine is the President of Sun Realty and Marina Shores.

managing the restaurant. This Arbitration Summary included invoices from Griggs, GMH, Portfolio and Marina Shores. At the conclusion of the arbitration hearing, the arbitrator awarded $171,874.00 to the debtor. The arbitrator did not make any specific factual findings nor did he explain his determination of damages. The arbitration decision was excepted to by Sun Realty and, after a hearing, the Circuit Court of the City of Virginia Beach overruled the exceptions and entered judgment against Sun Realty in the amount of the arbitration award. An appeal of the arbitration award to the Virginia Supreme Court was denied. Shortly thereafter, Marina Shores evicted the debtor from the restaurant.[2]

The Petitioning Creditors filed the instant bankruptcy petition on October 27, 1995. As of the date of the petition, the following creditors were alleged to have claims against the debtor.

## 1. MARINA SHORES

Marina Shores has a leasehold interest in the real property where the restaurant operated. The property is owned by David Levine and Gale Levine (Gale Levine is hereinafter referred to as "Levine"). In the involuntary petition, Marina Shores indicated it held claims against the debtor for

$960,000.00.[3] The first claim is based upon a suit arising from the debtor's breach of the lease agreement. Marina Shores alleged that the debtor had breached the lease and thereafter had given a legally sufficient notice of termination. Marina Shores also sought an award of damages resulting from the alleged breach. The debtor argued that the lease remained in effect and prayed for an award of damages it had incurred due to the alleged misconduct of Marina Shores. After trial, a substantial verdict was entered against Marina Shores. This verdict was reversed by the Virginia Supreme Court, which held that Marina Shores had properly terminated the lease in 1991.[4] The court entered final judgment for Marina Shores but did not either award damages to Marina Shores or remand for a determination of what damages Marina Shores may be entitled to receive.[5] Marina Shores has conceded that this claim is disputed. Therefore, we disregard this claim for the purposes of this proceeding.

 Marina Shores also asserts a claim for $9,663.78, which stems from an order of the Virginia Supreme Court in *Marina Shores v. Cohn–Phillips, supra,* directing the debtor to pay Marina Shore's legal costs relating to the lease litigation.[6] The debtor disputes this claim solely by asserting that

---

2. Prior to the entry of the award by the arbitrator, the Virginia Supreme Court determined that Marina Shores properly terminated the lease agreement with the debtor in June 1991. *Marina Shores, Ltd. v. Cohn–Phillips, Ltd.,* 246 Va. 222, 435 S.E.2d 136 (Va.1993). This decision was rendered September 17, 1993. The eviction occurred on September 8, 1995.

3. Marina Shores produced numerous exhibits in support of its alleged claims.

4. *Marina Shores, Ltd. v. Cohn–Phillips, Ltd.,* 246 Va. 222, 435 S.E.2d 136 (1993).

5. Marina Shores submitted a schedule itemizing its alleged damages from the breach of the lease. The damages include $127,058.00 for lost "pastthrough" expenses and $214,000.00 for interest and upgrades to the restaurant. A large part of the remaining damages in the schedule is a portion of a damage award Gale Levine and Marina Shores sought in *Levine v. McLeskey,* 881 F.Supp. 1030 (E.D.Va.1995). This federal suit was dismissed and subsequently appealed. The appeal remains pending.

The parties have several suits pending in state court: (1) Marina Shores has a chancery action against the debtor seeking temporary and permanent restraining orders and injunctions against the debtor relating to the 1990 lease; (2) Marina Shores is suing the debtor in a law action seeking rent under the 1990 lease for June 1992 through December 1992; (3) the debtor has a chancery action against Marina Shores alleging interference with the use of the restaurant, violations of the 1990 lease and conspiracy; and (4) the debtor has an action in detinue against Marina Shores seeking a recovery of its alleged inventory, furniture, fixtures and leasehold improvements at the restaurant, or, in the alternative, the value of these items. The United States Bankruptcy Court for the Eastern District of Virginia, prior to this matter, had been one of the few local courts not to have hosted this seemingly neverending war between Marina Shores and Cohn–Phillips.

6. Marina Shore's legal costs for the lease litigation totaled $8,121.50. This amount accrues interest at an annual rate of nine percent. *Va.Code Ann. § 6.1–330.54 (Michie 1993).* At the date of the petition, the interest totaled $1,542.28.

the mandate was included as an element of damages in *Levine v. McLeskey,* which was dismissed after entry of summary judgment against Marina Shores.

Finally, Marina Shores asserts a claim for unpaid rent for the months of June, July and August 1993. During this period, Sun Realty operated the restaurant pursuant to the Management Agreement. At trial, Marina Shores relied solely upon the Arbitration Summary, which indicated Sun Realty owed $32,200.00 for unpaid rent. This claim arises from the same 1990 lease that the Virginia Supreme Court ruled was terminated as of June 1991.

## 2. PORTFOLIO

Portfolio is also a petitioning creditor and has asserted a claim for $4,160.50. The parties stipulated that the debtor had contracted with Portfolio for advertising services in February 1993. They further stipulated that Sun Realty requested the advertising services that are the subject of Portfolio's claim in this involuntary petition. The evidence at trial produced several findings pertinent to our analysis. First, there was no evidence that the debtor contacted Portfolio to order the advertising services that are the basis of this claim. Secondly, part of the advertisement ordered by Levine did not relate to the debtor's business. On at least one occasion, Levine ordered advertising that included a "Women in Business" theme. Thirdly, $4,160.50 appears in the Arbitration Summary and correlates with the invoices admitted at trial. These invoices covered the period of June through September 1993. Finally, Portfolio did not demand payment and did not send the bill to the debtor. Instead, it sent the bill to Marina Shores.

## 3. G.M.H. INTERIORS

GMH provides interior design services and is also a petitioning creditor in this involuntary case. Sometime in 1993, GMH contracted with the debtor to provide design services. GMH started the work on the redesigning of the restaurant but the debtor canceled the work after reviewing the proposed plans. Subsequently, the debtor paid $225.00 to GMH. However, GMH asserts that the payment was only to reimburse design assistance rendered by Scott Lung ("Lung").

The documentary evidence indicates that Lung's bill totaled $225.00, the same amount as the payment made to GMH by the debtor. When Sun Realty assumed management of the restaurant, Levine informed GMH that she now operated the restaurant and caused Sun Realty to order more design work from GMH. Subsequently, GMH submitted a bill for services rendered for $1,350.00 to Marina Shores. This bill indicated that GMH rendered 27 hours of services of which six to seven hours were allegedly expended at the direction of the debtor. This $1,350.00 is the same amount contained in the Arbitration Summary. However, GMH delivered the bill to Marina Shores instead of the debtor and never demanded payment from the debtor.

## 4. GRIGGS

Larry Griggs is a painter who performed services relating to the restaurant at the request of Sun Realty. Griggs' invoice totaled $5,260.00 of which $2,500.00 was paid by Sun Realty. Accordingly, Griggs' claim totals $2,760.00, which is consistent with the Arbitration Summary. Griggs submitted the bill to Marina Shores and never demanded payment from the debtor.

## 5. OTHER CREDITORS

The parties dispute the number of creditors that have claims against the debtor. The Petitioning Creditors argue that more than 12 creditors exist with claims against the debtor. They rest their argument on several documents produced by the debtor. First, the Petitioning Creditors introduced the Arbitration Summary, which indicates 74 creditors with claims arising from operation of the restaurant existing as of February 1, 1994. They also introduced two letters drafted by the debtor and sent at the time of the assumption of restaurant operations by Sun Realty. The first letter, dated June 4, 1993, advised creditors of the Management Agreement with Sun Realty. Attached to this letter is a list of 17 creditors that the debtor contacted concerning the letter. The second letter, dated June 29, 1993, was also sent to the same 17 creditors. There is no evidence any of the Petitioning Creditors received the second letter. No other evidence was produced at trial by the Petitioning Creditors as to the number of creditors of the debtor. In

contrast, the debtor argues that only four creditors have claims against it as of the petition date.[7] The sole evidence in support of this position was the testimony of Paul Galloway, president of the debtor.

## ANALYSIS & CONCLUSIONS OF LAW

 The Petitioning Creditors filed the instant involuntary bankruptcy petition pursuant to § 303(b), which states in pertinent:

An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

 (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $10,000 more than the value of any lien in property of the debtor securing such claims held by the holders of such claims;

 (2) If there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $10,-000 of such claims ...

*11 U.S.C. § 303 (1995).* Generally, § 303(b)(2) permits a single creditor to file a petition for an involuntary bankruptcy against the debtor only if the debtor has fewer than twelve creditors. *Atlas Machine & Iron Works, Inc. v. Bethlehem Steel Corp.,* 986 F.2d 709, 714 (4th Cir.1993). If the debtor has twelve or more creditors, then at least three creditors must join in the involuntary petition under § 303(b)(1). *Id.* The general rule is that the number of the creditors is to be determined at the date the petition is filed. *In re Norris,* 183 B.R. 437, 450 (W.D.La.1995); *see 2 Collier on Bankruptcy* ¶ 303.08 (1995). In addition, such creditors must show that:

 (1) their claims are not contingent as to liability;

 (2) their claims are not the subject of a bona fide dispute; and

 (3) the aggregate amount of their claims is at least $10,000.

*11 U.S.C. § 303(b); see 2 Collier on Bankruptcy* ¶ 303.08 (1995).

 While courts differ on an exact definition of "bona fide dispute," it clearly entails some genuine, existing conflict. *Atlas Machine & Iron Works, Inc.,* 986 F.2d at 716. Moreover, a bona fide dispute exists when there is a genuine issue of material fact that bears upon the debtor's liability or a meritorious contention as to the application of the law to the facts. *In re Fox,* 162 B.R. 729, 732 (Bankr.E.D.Va.1993); *In re Caucus Distributors, Inc.,* 106 B.R. 890 (Bankr. E.D.Va.1989). A bona fide dispute must exist as to the validity of an entire claim and not merely some of the claim. *Fox,* 162 B.R. at 732.[8] An unstayed or non-appealable final judgment is not subject to a bona fide dispute. *In re Everett,* 178 B.R. 132, 140 (Bankr.N.D.Ohio 1994); *In re Smith,* 123 B.R. 423, 425 (Bankr.M.D.Fla.1990); *In re Raymark Industries, Inc.* 99 B.R. 298, 300 (Bankr.E.D.Pa.1989); *In re Caucus Distributors, Inc.,* 83 B.R. 921, 929 (Bankr.E.D.Va. 1988); *In re Drexler,* 56 B.R. 960, 967 (Bankr.S.D.N.Y.1986); *cf. Concrete Pumping Service, Inc. v. King Construction Co. (In re Concrete Pumping Service, Inc.),* 943 F.2d 627, 629 (6th Cir.1991). In deciding whether a bona dispute exists, a court does not actually resolve the dispute. *Subway Equipment Leasing Corporation v. Sims (In re Sims),* 994 F.2d 210, 221 (5th Cir.1993); *Rimell v. Mark Twain Bank (In re Rimell),* 946 F.2d 1363, 1365 (8th Cir.1991); *Bartmann v. Maverick Tube Corporation,* 853 F.2d 1540, 1544 (10th Cir.1988); *In re Busick,* 831 F.2d 745, 750 (7th Cir.1987). Furthermore, mere failure of a creditor to demand payment of debt does not excuse failure of the debtor to pay the debt. *In re Everett,* 178 B.R. 132 (Bankr.N.D.Ohio 1994); *In re West Side*

---

**7.** The debtor asserts that only the following creditors have claims against it: Sandler Foods, Inc., Clark & Stant, Goodman and Co., and Galloway.

**8.** "Entire claim" is distinguished from "all claims." The claims of a holder of multiple claims are not dismissed merely because one of them is subject to a bona fide dispute.

*Community Hospital, Inc.,* 112 B.R. 243, 256 (Bankr.N.D.Ill.1990); *In re All Media Properties, Inc.,* 5 B.R. 126, 145 (Bankr.S.D.Tex. 1980); *In re Rimell,* 111 B.R. 250, 253 (Bankr.E.D.Mo.1990), *affirmed,* 946 F.2d 1363 (8th Cir.1991); *In re Win–Sum Sports, Inc.,* 14 B.R. 389, 392–393 (Bankr.D.Conn. 1981).

The Petitioning Creditors have the burden of establishing a prima facie case that a bona fide dispute does not exist. *Subway Equipment Leasing Corporation,* 994 F.2d at 221; *Atlas Machine & Iron Works,* 986 F.2d at 715; *Rimell,* 946 F.2d at 1365; *Rubin v. Belo Broadcasting Corporation (In re Rubin),* 769 F.2d 611, 615 (9th Cir.1985). Once this is done, the burden shifts to the debtor to present evidence demonstrating that a bona fide dispute does exist. *Subway Equipment Leasing Corporation,* 994 F.2d at 221; *Rimell,* 946 F.2d at 1365.

Turning the facts of the instant case, we first conclude that the Petitioning Creditors have failed to meet their burden of proof under § 303(b)(1). This section requires that there are twelve or more creditors exist. The Petitioning Creditors argue that there are more than twelve creditors with claims against the debtor. The only evidence on this issue is the Arbitration Summary submitted by the debtor in the arbitration proceeding against Sun Realty and the June letters sent out to various creditors from the debtor. In addition, the Petitioning Creditors argue that the debtor is judicially estopped from asserting that it does not have at least twelve creditors because the debtor had previously claimed that it had 74 creditors in the Arbitration Summary and 17 creditors in the June letters.

The Petitioning Creditors' arguments are misplaced. The Code contemplates that the number of creditors is to be determined at the *date* of the petition filing. *See 2 Collier on Bankruptcy* ¶ 303.08 (1995). The Arbitration Summary and the June letters do not establish that the debtor had twelve or more creditors on the date of the petition. The Petitioning Creditors' evidence may establish that the debtor had many creditors at the time of Arbitration Summary and at the time of the June letters. However, the evidence did not establish anything more.[9]

Furthermore, we conclude that the doctrine of judicial estoppel is inapplicable to our analysis.[10] Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken by the same party in a prior litigation. *John S. Clark Company v. Faggert & Frieden, P.C.,* 65 F.3d 26, 28–29 (4th Cir.1995). While the circumstance that invokes the principle is probably not reducible to a general formulation, the purpose is to prevent a party from playing "fast and loose" with the court. *Allen v. Zurich Insurance Co.,* 667 F.2d 1162, 1166–67 (4th Cir.1982). The primary consideration is whether the intentional self-contradiction is purporting as a means to gain an unfair advantage and compromise judicial integrity. *Clark,* 65 F.3d at 29; *Allen,* 667 F.2d at 1166. Judicial integrity is compromised if the court's determination was based on that party's prior position and whose basis is now on a position wholly in contradiction. *Teledyne Industries, Inc. v. National Labor Relations Board,* 911 F.2d 1214, 1217–18 (6th Cir.1990). A litigant asserting judicial estoppel may do so by showing that the opposing

---

**9.** We note at this point that the debtor argued that the Court does not have subject matter jurisdiction because the Petitioning Creditors do not qualify to file the instant involuntary petition. We disagree. The statutory elements required for involuntary bankruptcy petitions are not jurisdictional; instead, they are substantive matters that must be proved by the Petitioning Creditors. *Rubin v. Belo Broadcasting Corporation, (In re Rubin),* 769 F.2d 611, 614–615 (9th Cir.1985), *In re Everett,* 178 B.R. 132 (Bankr.N.D.Ohio 1994); *In re Barth,* 109 B.R. 570 (Bankr.D.Conn.1990); *cf. In re Elsa Designs, Ltd.,* 155 B.R. 859, 863 (Bankr.S.D.N.Y.1993), (requirement that claim not subject of bona fide dispute is both an element of condition upon which controverted or-

der for relief may be entered in an involuntary case and necessary prerequisite for bankruptcy court's jurisdiction).

**10.** The doctrine of judicial estoppel is distinct from other estoppel arguments. Collateral estoppel prevents a party from re-litigating ultimate issues of fact that have been resolved against that party. *Teledyne Industries, Inc. v. National Labor Relations Board,* 911 F.2d 1214, 1220 (6th Cir.1990), *see Allen v. Zurich Insurance Co.,* 667 F.2d 1162, 1166–67 (4th Cir.1982). In contrast, equitable estoppel prevents a party from inducing a litigant's reliance on a position and then subsequently adopting the reverse position to win in another scenario. *Id.*

party took a contrary position under oath in a prior proceeding and the court accepted that prior position. *Teledyne Industries, Inc. v. National Labor Relations Board,* 911 F.2d 1214, 1217–18 (6th Cir.1990). While judicial estoppel is usually found where there are prior judgments, the rules of judicial estoppel should apply to an arbitration award. *Cashmore v. Builders Square, Inc.,* 211 Ill.App.3d 13, 155 Ill.Dec. 742, 745, 569 N.E.2d 1353, 1356 (1991); *see Thompson v. Anderson,* 429 Pa.Super. 532, 632 A.2d 1349, 1350–51 (1993). The lack of judicial verdict or opinion in the prior instance should not be an issue. *Dapelo v. Banco Nacional De Mexico,* 1993 WL 159943 (S.D.N.Y.).

■ In the instant case, the Arbitration Summary indicated that claims arose from the restaurant operation under the Management Agreement totaling approximately $188,000.00 and included the claims of the Petitioning Creditors. However, the arbitrator did not explain how liability was determined or how the amount of the award was derived. In addition, we cannot conclude that the arbitrator clearly accepted the debtor's position since he only awarded part of the debtor's claim.

Further, it is not evident in the portions of the arbitration proceeding which are part of this record that the arbitrator reached any conclusion as to whether the debtor ultimately was liable for any of the expenses found in the Arbitration Summary. Since we do not know the basis of the arbitrator's decision or whether he accepted the debtor's position at all (assuming for these purposes that the debtor's position was contradictory to its position in the instant case), we cannot hold that judicial integrity has been compromised.

More importantly, the evidence did not clearly indicate that the debtor's position in

the arbitration hearing was wholly contradictory to its position in these bankruptcy proceedings. The debtor's position before us is that the debts of the Petitioning Creditors are subject to a bona fide dispute as to the debtor's liability for payment thereof. The debtor's position in the arbitration hearing was not that the claims were undisputed. Its position in the arbitration hearing was only that the damages stemming from Sun Realty's breach of the Management Agreement included those the claims at issue. This assertion does not irrevocably lead to a conclusion that no defenses exist to these claims were these creditors to seek enforcement directly against the debtor. Accordingly, we do not adopt the Petitioning Creditors' judicial estoppel argument.

■ Even assuming that the debtor had twelve or more creditors, the petitioning creditors still failed to prove that at least three of them are qualified to be a petitioning creditor in this involuntary petition. Of the four Petitioning Creditors, only Marina Shores qualifies as a petitioning creditor. Its claim arose from the Virginia Supreme Court's mandate. We reject the debtor's argument that the mandate is subjected to a bona fide dispute. The mandate was a non-appealable judgment. Therefore, it is not subject to a bona fide dispute. As for the remaining Petitioning Creditors, none of them qualify to join the involuntary petition since each of their claims is subjected to a bona fide dispute.[11]

■ First, the evidence concerning Portfolio's claim indicates that their claim is greatly disputed. Portfolio contends that it rendered services to the debtor. The debtor argues that the debt is owed by Marina Shores, Sun Realty or Levine individually.[12]

11. The debtor also asserts that the claims, other than Marina Shores', are disputed since the debtor was not liable under agency principles. The essence of the argument is that the one who deals with an agent does so at his own peril and has a duty to ascertain the agent's authority. Since our decision does not turn on this argument, we decline to adopt it.

We also decline to address the Petitioning Creditors' arguments that (1) the debtor retained the underlying liability for the debts incurred by Sun Realty on behalf of the debtor despite the management agreement and that (2) the debtor would be unjustly enriched since it retains the

fruit of the arbitration award without paying the expenses. Our analysis is limited to whether a bona fide dispute exists.

12. The debtor also alleges that Portfolio's claim, if any, is barred by the statute of fraud and the doctrine of collateral estoppel. It did not articulate why the statute of fraud would bar the claim and has not pressed this argument. Its collateral estoppel argument relies upon the dismissal with prejudice of the case of *Landmark Communications, Inc. v. Cohn–Phillips, Ltd., et al.,* filed in the Circuit Court of the City of Norfolk. The debtor alleges that Portfolio is a division of Land-

While the parties do not dispute that the debtor did contract with Portfolio for some advertising services, there is no evidence that the debtor contacted Portfolio to order the advertising services specifically relating to the instant claim. Furthermore, we conclude that the findings that Portfolio did not demand payment and did not send the bill to the debtor are not dispositive by themselves. However, when we combined with the finding that the claim included work ordered by Levine for her own interest, e.g., the "Women in Business" order, we can conclude that the debtor's dispute is genuine.

■ The claim of GMH is likewise deficient in that its claim is also subjected to a bona fide dispute. The parties do not dispute that GMH rendered some services for the benefit of the debtor. However, the debtor asserts that it fully paid GMH. It argues that the outstanding invoice, which is the basis of GMH's claim, was for services rendered to Levine, individually, or in her capacity as Marina Shores. In contrast, GMH argues that the services were rendered to the debtor, not Levine or Marina Shores. It asserts that the prior payment by the debtor constituted only reimbursement for Lung's fees that GMH initially incurred. It argues that Lung's bill and the check to GMH created an inference that the payment was made only to Lung since the checks and Lung's bill were for the exact amount.

We find that the evidence does not create an inference as clear as GMH asserts. The check here was payable to GMH, not Lung, and was for the only bill submitted to the debtor for payment. More important, the debtor benefited only from part of the GMH claim. The evidence indicated that part of the billed twenty plus hours were rendered at the debtor's direction, although the exact amount was undeterminable. Coupled with the findings that GMH never delivered the bill to the debtor nor demanded payment from the debtor, we conclude that the debtor has a genuine dispute as to the claim. Accordingly, GMH cannot join as a petitioning creditor in this involuntary petition.

■ Turning to Griggs' claim, we also conclude that this claim is subject to a bona fide dispute. The debtor contends that it does not owe this debt. It asserts that Griggs' claim is based on services rendered to Levine, Sun Realty or Marina Shores. The evidence indicates that the debtor is reasonable in believing that it does not owe the debt. Sun Realty's partial payment of the bill and Grigg's failure to demand payment from the debtor lead us to conclude that the debtor's assertion that a bona fide dispute exists is genuine. Accordingly, Griggs does not qualify to join as a petitioning creditor in this involuntary petition.

■ Although the Petitioning Creditors have failed to prove that they are entitled to relief under § 303(b)(1), they may, nevertheless, maintain the involuntary petition under § 303(b)(2) if they prove that one of them has a claim aggregating at least $10,000.00. 11 U.S.C. § 303(b)(2); *Atlas Machine & Iron Works, Inc.*, 986 F.2d at 714. Out of the four Petitioning Creditors, only Marina Shores may qualify under § 303(b)(2).

■ We conclude that Marina Shores does not qualify to file an involuntary petition under § 303(b)(2). The problem with Marina Shores' claim is that it does not exceed the $10,000.00 as required under § 303(b)(2). The mandate from the Virginia Supreme Court, with accrued interest, totals only $9,663.78. In order for Marina Shores to qualify under § 303(b)(2), it necessarily has to include the $32,200 unpaid rent allegedly owed by the debtor for June, July and August 1993. Although the Petitioning Creditors may have a plausible claim for the unpaid rent based on a holdover tenancy, they did not present any evidence to support such a conclusion. The sole evidence in this record to support this alleged claim is the Arbitration Summary and the original lease agreement. For the same reasons set forth earlier, the Arbitration Summary is insufficient to impose a judicial estoppel nor can the lease agreement prove a claim for rents incurred after a judicial determination of termination in June 1991. More evidence is

mark Communications, Inc. and that the dismissal order is a bar to any claim of Landmark, or any division of Landmark, that may have existed

at that time. Since our decision does not rely, upon these grounds, we need not address the merits of these arguments.

necessary to adjudicate the factual complexity of this possible claim and the legal consequences arising under Virginia law. Since no evidence other than the Arbitration Summary was submitted for our consideration, we do not consider the claim for unpaid rent in our analysis. We note, however, that even if the evidence sufficiently provided a basis for the unpaid rental claim, the debtor may have had a genuine bona fide dispute to the claim.[13] Accordingly, Marina Shores cannot maintain an involuntary petition against the debtor under § 303(b)(2).

Having found that the Petitioning Creditors have failed to carry their burden of proof as to the elements required under 11 U.S.C. § 303(b), the involuntary petition herein may not proceed.

### ORDER

For the reasons stated above, the motion to dismiss is GRANTED and the petition is therefore DISMISSED.

**13.** The debtor argues that the failure of the Virginia Supreme Court to make an award of damages or remand for a determination of damages after reversal of the trial court verdict in *Marina Shores v. Cohn–Phillips, supra,* has the effect of barring any award for damages under the lease agreement, including rent allegedly due for the months of June, July and August 1993. We expressly do not decide this issue.