**In re J. Anthony HUGGINS, Debtor.**

No. 6:06–bk–01546–ABB.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

March 28, 2007.

77

Michael S. Budwick, Meland Russin & Budwick PA, Miami, FL, for Debtor.

## *ORDER*

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the Involuntary Petition (Doc. No. 1) ("Petition") filed by R.W. Cuthill, Jr. ("Cuthill"), on behalf of Evergreen Security, Ltd. ("Evergreen") as the petitioning creditor, against J. Anthony Huggins, the alleged Involuntary Debtor herein ("Debtor" or "Huggins"), and the Debtor's Answer thereto (Doc. No. 9). Evidentiary hearings were conducted on July 26, 2006 and February 22, 2007 at which the Debtor, Cuthill, counsel for Cuthill, and Leigh R. Meininger, the Chapter 7 Trustee, were present. The Debtor's counsel was present at the July 26, 2006 hearing and subsequently was allowed to withdraw.[1] The

Debtor appeared at the February 22, 2006 hearing *pro se* and continues to act *pro se.*

The matter was taken under advisement and the parties were invited to submit and serve on each other proposed findings of fact and conclusions of law ("FOFCOL") by March 8, 2007. The parties filed their FOFCOL on March 8, 2007.[2] The Debtor, on March 19, 2007, filed the Debtor's Objections to Evergreen's FOFCOL (Doc. No. 73) ("Objection"). The Debtor did not seek leave of Court to file the Objection outside of the March 8, 2007 submission deadline. Evergreen filed a Motion to Strike the Objection (Doc. No. 74). The Objection was untimely filed and is due to be denied.

The Court makes the following findings and conclusions after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## *FINDINGS OF FACT*

### *Case Background*

Evergreen, a British Virgin Islands International Business Corporation, filed a voluntary Chapter 11 bankruptcy case on January 23, 2001. Cuthill was appointed the Chapter 11 Trustee by Order entered on March 14, 2001 and sole Director and President of Evergreen pursuant to Evergreen's confirmed Plan. Cuthill is the representative of the Evergreen estate and is charged with, among other things, retaining and enforcing causes of action for the

---

1. The law firm of GrayRobinson filed a Motion to Withdraw as counsel to the Debtor on February 4, 2007 (Doc. No. 61). GrayRobinson filed a statement (Doc. No. 62) setting forth the Debtor did not object to GrayRobinson's withdrawal. The hearing on the Motion was held on February 13, 2007 and the Motion was granted.

2. The Debtor filed a Joinder (Doc. No. 70) adopting the FOFCOL filed by Jon M. Knight and APAM, Inc. in Case Nos. 06–01547–ABB and 06–01549–ABB and making additional argument.

benefit of Evergreen's creditors.[3] Evergreen was found to be a Ponzi scheme.

Cuthill instituted Adversary Proceeding No. 6:01–ap–00232–ABB (the "Mataeka AP") against the Debtor, Jon M. Knight ("Knight"), Mataeka, Ltd. ("Mataeka"), and Atlantic Portfolio Analytics & Management, Inc., a/k/a APAM, Inc. ("APAM") seeking the avoidance and recovery of fraudulent transfers. The focus of the Mataeka AP was the 1997 transfer of $6,500,000.00 from Evergreen Trust to Mataeka and the subsequent transfers of the funds to the Debtor, Knight, and others.[4] The Debtor and Knight characterized the transfer as a "loan."

The Debtor and Knight were found to be key players in the Evergreen Ponzi scheme and orchestrated the unlawful transfer of $6,500,000.00 from Evergreen Trust to themselves and various entities they controlled. A Memorandum Opinion and Judgment (collectively, "the Mataeka Judgment") were entered on March 22, 2006 awarding judgment to Evergreen and against the defendants.[5] Judgment was entered against the Debtor, Knight, and Mataeka (found to be the Debtor's and Knight's alter ego), jointly and severally, in the amount of $4,889,053.90, plus prejudgment interest in the amount of $3,052,467.69, and against APAM in the amount of $2,500,000.00. Post-judgment interest is accruing. The Mataeka Judgment is a debt owed to Evergreen.

The defendants appealed the Mataeka Judgment and the appeal is pending in the District Court.[6] They did not seek a stay of the Mataeka Judgment.

The Debtor, only days after the entry of the Mataeka Judgment, transferred his "half interest" in a Ford F250 truck to his former wife, Rosalind Huggins, allegedly for $4,007.50.[7] He failed to produce any evidence establishing his receipt of payment, the source of any payment, or the fair market value of the asset. He testified he has unfettered access to it.

The Debtor and the other Mataeka AP defendants have not contested a debt is owed to Evergreen. They have contested the amount owed, the reason for the debt, and the characterization of the Mataeka "loan" transaction. The Debtor, Mataeka, Knight, and APAM, in November 2002, attempted to tender to Cuthill check number 0091 in the amount of $1,539,955.49 as "payment in full" of the Mataeka "loan." Cuthill refused to accept the check.

GrayRobinson, former counsel for the Debtor, Knight, Mataeka, IPA, and APAM, delivered to Cuthill on June 26, 2006 Check No. 0098 in the amount of $1,095,983.40 as payment on the Writ of Garnishment issued against GrayRobinson.[8] Cuthill applied the payment to the Mataeka, Knight, and Huggins liability for the Mataeka Judgment and notated the payment as a payment made by Mataeka. The Debtor did not object to GrayRobinson's payment.

---

**3.** Evergreen's Exh. No. 2 (Confirmation Order) at p. 7 ¶ A.A, p. 13 ¶¶ 14–15.

**4.** Evergreen created a wholly owned trust named Evergreen Trust in April 1994 for the purpose of pooling investor funds, purchasing various investments and holding some of Evergreen's assets.

**5.** Mataeka AP Doc. Nos. 87, 88; Evergreen's Exh. No. 1.

**6.** District Court Case No. 6:06–cv–00837–JA–DAB.

**7.** Evergreen's Exh. No. 6; Transcript of July 26, 2006 hearing at p. 109. The transfer document is dated April 13, 2006; Huggins testified he and his wife divorced in 2002.

**8.** Evergreen's Exh. Nos. 14, 15.

## Involuntary Petitions

Evergreen holds a liquidated claim against the Debtor pursuant to the Mataeka Judgment. Evergreen, through Cuthill, filed three involuntary Chapter 7 bankruptcy petitions against Knight, Huggins and APAM on June 28, 2006 ("Petition Date") as a means to seek collection of the Mataeka Judgment.[9] Evergreen, taking into account the GrayRobinson garnishment payment, was owed a minimum of $6,845,538.19 on the Mataeka Judgment on the Petition Date.

Cuthill believes Knight and Huggins have interests in off-shore trusts, which interests may be subject to turnover as property of the estate.[10] The Debtor was, and still may be, a settlor and a beneficiary of the Arctic Trust. A tax return obtained by Cuthill reflects a balance in excess of $4,700,000.00 in the trust.[11] Cuthill has exhausted Evergreen's non-bankruptcy collection remedies within the United States.[12]

The involuntary debtors filed answers challenging the petitions. A joint evidentiary hearing on the Knight and Huggins involuntary petitions commenced on July 26, 2006.[13] The evidentiary hearings were reconvened and completed on March 22, 2007.

The Debtor was unresponsive to discovery requests propounded by Cuthill causing Cuthill to seek an order compelling production. He produced only one bank statement to Cuthill, a Commerce National Bank and Trust for Account No. 1006352 for the period April 16 to May 15, 2006 reflecting an ending balance of $73.00.[14] The account is titled in his name individually. The Debtor testified he did not have

9. Cuthill instituted the involuntary cases: *In re Jon M. Knight,* Case No. 6:06–bk–01547–ABB; *In re J. Anthony Huggins,* Case No. 6:06–bk–01546–ABB; *In re Atlantic Portfolio Analytics & Management, Inc.,* Case No. 6:06–bk–01549–ABB.

10. Evergreen's Exh. No. 3. Evergreen filed emergency motions in the Huggins and Knight involuntary cases seeking the appointment of an interim trustee, which the involuntary debtors opposed. A joint hearing on the emergency motions was conducted on July 12, 2006 and Evergreen's motions were granted. The United States Trustee appointed Leigh R. Meininger as the Interim Chapter 7 Trustee in the Huggins and Knight involuntary cases.

11. The Debtor confirmed this information. July 26, 2006 transcript at p. 112.

12. *See* July 26, 2006 transcript at p. 112: Counsel for Cuthill inquired regarding the Mataeka Judgment: "You have no assets in the United States sufficient to pay that debt, do you?" The Debtor responded: "No, I do not." Counsel for Cuthill continued: "And if Mr. Cuthill is to proceed in State Court and execute on personal property, you don't have personal property located in any county in Florida near enough to satisfy that debt, do you?" Debtor responded: "If I understand the question, I don't have the capacity to pay the debt, if that's the—" Counsel: "But there is the trust that is in the Bahamas, correct, the Arctic Trust?" Debtor: "Yes."

13. The completion of the Knight and Huggins evidentiary hearings and the commencement of the APAM evidentiary hearing were delayed due to the filing (on July 27, 2006) of the Motion for Recusal, Motion to Disqualify, Disclosure of All Ex Parte Communications and Revocation of all Prior Orders filed by the Debtor, Mataeka, Huggins, APAM, and International Portfolio Analytics, Inc. seeking, among other things, the recusal of the undersigned in all proceedings in which the movants are parties. The involuntary cases were held in abeyance during the pendency of the Recusal Motion. An Order denying the Recusal Motion was entered on February 27, 2007. The Order was not appealed and constitutes a final, non-appealable order. Cuthill filed a motion in the Mataeka Appeal seeking to supplement the appellate record with the February 27, 2007 Order, which was granted by the District Court.

14. Evergreen's Exh. No. 9.

any other statements and admitted he did not request copies of statements from his bank.[15]

The Debtor is highly educated and experienced in financial and business matters. The documents the Debtor produced are incomplete and his explanations for failing to produce documents are unpersuasive. His inability during depositions to recall information relating to his finances and business transactions is suspicious. His failures to comply with and respond to discovery requests were purposeful.

The Debtor asserts his only regular income is from Social Security and a small pension with the Florida Pension Fund.[16] He stated he lives with a daughter and she pays the household utilities.[17] He testified he has two credit cards, but does not use them.[18] He asserts he is indebted to the Arctic Trust for a $500,000.00 loan, but failed to produce any documentation establishing a liability and could not identify any payments despite his contention "I know I paid back a substantial portion."[19] The Debtor is not making payments on any credit card or Arctic Trust liabilities, to the extent such liabilities exist.

The Debtor admitted he was a beneficiary of the Arctic Trust on the Petition Date and the trust is holding his property.[20]

His 2003 tax return reflects the gross value of the trust is $4,758,433.00.[21] He reported income of $130,318 from the trust in his 2004 tax return.[22]

Foley & Lardner filed an appeal on the Debtor's behalf, but the Debtor contends he did not engage the firm and has no liability to the firm.[23] He admitted Mataeka paid his GrayRobinson legal fees explaining: "I don't know if I really had legal fees. I was sort of a free rider on the Mataeka account, but I[was] never directly billed as such. Had no money to pay it, that's right."[24]

The Debtor testified he owned 51% of APAM and sold his interest in the company to Knight.[25] He could not or would not disclose the terms of the sale, the consideration paid, and the disposition of the company's assets. He testified APAM ceased operations in 2002. The tax returns obtained by Cuthill reflect APAM was operating in 2003 and 2004. The Debtor used APAM in 2003 and 2004 to pay his personal legal fees and then deducted such payments as expenses on his personal federal income tax returns.[26]

The Debtor conceded he owes a debt to Evergreen pursuant to the Mataeka Judgment. He conceded he owes $7.9 million to Evergreen, that the debt is the only

15. July 26, 2006 hearing transcript at p. 104.

16. Transcript of July 26, 2006 hearing at p. 105.

17. Transcript of July 26, 2006 hearing at p. 108.

18. Transcript of July 26, 2006 hearing at p. 111.

19. Transcript of July 26, 2006 hearing at p. 105.

20. Evergreen's Exh. No. 10.

21. Evergreen's Exh. No. 7.

22. Evergreen's Exh. No. 8.

23. Transcript of July 26, 2006 hearing at p. 108.

24. Evergreen's Exh. No. 4 at p. 46; Transcript of July 26, 2006 hearing at p. 107.

25. Evergreen Exh. No. 4 at p. 31.

26. Evergreen Exh. No. 4 at p. 52; Exh. No. 7, 8: $536,039 was deducted by the Debtor for legal fees in the 2003 Income from Passthroughs schedule and $622,739.00 was deducted for legal fees in the 2004 Income from Passthroughs schedule.

debt he owes, and he has made no payment on that debt.[27] He asserts he has no ability to make payment on the debt.[28] He testified he has no assets in the United States to satisfy the Mataeka Judgment debt.[29]

The Debtor's core objection to the involuntary petition is the Mataeka Judgment is subject to a bona fide dispute. He, in support of his bona fide dispute contention, reiterated the same arguments made in the Mataeka Judgment appeal. He relied solely on the arguments contained in the Appellants' Initial Brief and did not attempt to offer any evidence beyond what was previously admitted into evidence in the Mataeka AP. He presented no new evidence or legal authority establishing the Mataeka Judgment is subject to a bona fide dispute.

### Summary

The Debtor conceded he has fewer than twelve creditors. He conceded he owes a debt to Evergreen pursuant to the Mataeka Judgment. Evergreen's claim is not contingent as to liability and Cuthill established a bona fide dispute regarding the debt does not exist. The Debtor has provided no new evidence or legal authority in support of reversal of the Mataeka Judgment. He has failed to identify a genuine issue of material fact that bears upon his liability to Evergreen or demonstrated a meritorious contention as to the application of law to undisputed facts. The Mataeka Judgment debt is not subject to a bona fide dispute.

The Debtor conceded the Mataeka Judgment is his only debt. He conceded he is not making payment on the Mataeka Judgment and is in default. He, based upon the totality of the circumstances, is generally not paying his debts as they come due.

Special circumstances exist in support of a finding Cuthill is entitled to an Order for Relief against the Debtor. The Debtor has attempted to thwart collection of the Mataeka Judgment through fraud, trick, artifice and/or sham. He, within days of entry of the Mataeka Judgment, transferred a vehicle to his former wife for no consideration. He purposefully withheld information and failed to provide complete responses to discovery requests. He has no assets in the United States to satisfy the Mataeka Judgment debt. He structured his financial affairs to ensure Cuthill has no adequate collection remedies other than through an involuntary bankruptcy proceeding.

### CONCLUSIONS OF LAW

#### 11 U.S.C. Section 303(b)(2)

Cuthill, on behalf of Evergreen, filed the Involuntary Petition against the Debtor pursuant to Section 303(b)(2) of the Bankruptcy Code. Section 303(b)(2) permits an entity holding a claim against a debtor to file an involuntary petition as the sole petitioning creditor where: (i) the debtor has fewer than twelve creditors; (ii) the filing creditor holds the aggregate of at least $12,300.00 of the claims; and (iii) the claims held by the filing creditor are not contingent as to liability or the subject of a "bona fide dispute as to liability or amount...." 11 U.S.C. §§ 303(b)(1), (2) (2005). Section 101(5) broadly defines the term "claim" to include a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, se-

---

**27.** Transcript of July 26, 2006 hearing at p. 111.

**28.** *Id.*

**29.** Transcript of July 26, 2006 hearing at p. 112.

82

cured, or unsecured." 11 U.S.C. § 101(5)(A).

▮ The Bankruptcy Code does not define "bona fide dispute." The majority of courts, including this Court, have adopted an objective test for determining whether a bona fide dispute exists.[30] The Court of Appeals for the Third Circuit articulated the objective test as: a bona fide dispute exists "[i]f there is a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to disputed facts...." *B.D.W. Assocs.*, 865 F.2d at 66–67. Articulated another way: "[T]he bankruptcy court must determine whether there is an objective basis for either a factual or legal dispute as to the validity of [the] debt." *In re Busick*, 831 F.2d 745, 750 (7th Cir.1987).

▮ "Thus a bona fide dispute exists only when there are substantial factual or legal questions that bear upon the debtor's liability." *In re Byrd*, 357 F.3d at 437. "A bona fide dispute must exist as to the validity of an entire claim and not merely some of the claim." *In re Cohn–Phillips, Ltd.*, 193 B.R. 757, 763 (Bankr.E.D.Va. 1996).

▮ "Establishing the existence or absence of a bona fide dispute involves a shifting burden of proof." *In re Biogenet-ic Techs., Inc.*, 248 B.R. at 856. The petitioning creditor has the initial burden to establish a prima facie case that a bona fide dispute *does not* exist as to both liability and amount. *In re Byrd*, 357 F.3d at 438; *In re BDC 56 LLC*, 330 F.3d at 118. Once a prima facie case is established the burden shifts to the debtor to demonstrate a bona fide dispute *does* exist. *In re Byrd*, 357 F.3d at 439; *In re Rimell*, 946 F.2d at 1363. "Because the standard is objective, neither the debtor's subjective intent nor his subjective belief is sufficient to meet this burden...." *Id.* at 1365. "The bankruptcy court need not resolve the merits of the bona fide dispute, but simply determine whether one exists." *In re Byrd*, 357 F.3d at 437.

▮ Some courts have determined a claim that has been reduced to an unstayed judgment cannot be the subject of a bona fide dispute. *In re Norris*, 183 B.R. 437, 452–54 (Bankr.W.D.La.1995); *In re Galaxy Boat Mfg. Co. Inc.*, 72 B.R. 200, 202 (Bankr.D.S.C.1986). "A claim based on an unstayed judgment as to which an appeal has been taken by the debtor is not the subject of a bona fide dispute." *In re Drexler*, 56 B.R. 960, 967 (Bankr.S.D.N.Y. 1986). "It would be contrary to the basic principles respecting, and would effect a radical alteration of, the long standing en-

30. 2 COLLIER ON BANKRUPTCY ¶ 303.03[2][b], at 303–28–29 (15th ed. rev.2005). Circuit Courts of Appeals adopting the objective test include: *Platinum Fin. Serv. Corp. v. Byrd (In re Byrd)*, 357 F.3d 433, 437 (4th Cir.2004); *Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 117–18 (2d Cir.2003); *Liberty Tool & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.)*, 277 F.3d 1057, 1064 (9th Cir.2002); *Subway Equip. Leasing Corp. v. Sims (In re Sims)*, 994 F.2d 210, 220–21 (5th Cir.1993); *Rimell v. Mark Twain Bank (In re Rimell)*, 946 F.2d 1363, 1365 (8th Cir.1991); *B.D.W. Assocs., Inc. v. Busy Beaver Bldg. Ctrs., Inc.*, 865 F.2d 65, 66–67 (3d Cir.1989); *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1543–44 (10th Cir. 1988); *In re Busick*, 831 F.2d 745 (7th Cir. 1987). The Bankruptcy Appellate Panel for the Sixth Circuit in *Booher v. Eastown Auto Co. (In re Eastown Auto Co.)*, 215 B.R. 960, 965 (6th Cir. BAP 1998), the District Court for the First Circuit Court of Appeals in *Efron v. Gutierrez*, 226 B.R. 305 (D.P.R.1998), and the United States Bankruptcy Court for the Middle District of Florida, Tampa Division in *In re Biogenetic Techs., Inc.*, 248 B.R. 852, 856 (Bankr.M.D.Fla.1999) have also adopted the objective approach. This Court adopted the objective test in *In re Manhattan Indus., Inc.*, 224 B.R. 195 (Bankr.M.D.Fla.1997).

forceability of unstayed final judgments" for a bankruptcy court to find such judgment was, until reversed, subject to a bona fide dispute. *Id.*

## 11 U.S.C. Section 303(h)

Section 303(h) provides, after the trial on an involuntary petition, "the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(h)(1).[31]

■ The courts apply a flexible totality of the circumstances test in determining whether a debtor is "generally not paying" his debts, which focuses on the number of unpaid claims, the amount of the claims, the materiality of nonpayment and the overall conduct of the debtor's financial affairs. *In re Concrete Pumping Serv.,* 943 F.2d 627, 630 (6th Cir.1991); *Fed. Fin. Co. v. DeKaron Corp.,* 261 B.R. 61, 64 (S.D.Fla.2001).

The courts recognize it may be difficult for a single-creditor petitioner to establish the requirements of Section 303(h), particularly whether the debtor is generally paying his debts as they come due.[32] Although the plain language of Section 303(b) allows a single-creditor filing, some courts have carved out exceptions and found 303(h) is satisfied where special circumstances exist. 2 COLLIER ON BANKRUPTCY ¶ 303.04[6], at 303–44. Special circum-

stances include: (i) the lack of an adequate remedy for the creditor pursuant to state or federal law if the order for relief is not granted; or (ii) a showing of fraud, trick, artifice or sham by the debtor. *In re Smith,* 123 B.R. 423, 425–26 (Bankr. M.D.Fla.1990); *In re R.V. Seating, Inc.,* 8 B.R. 663, 665 (Bankr.S.D.Fla.1981); *Matter of 7H Land & Cattle Co.,* 6 B.R. 29, 34 (Bankr.D.Nev.1980).

### Conclusion

■ Cuthill is the representative of the Evergreen estate pursuant to the confirmed Plan, the Confirmation Order, and 11 U.S.C. Section 1123(b)(3)(B). Evergreen, as of the Petition Date, held a liquidated claim, that is not contingent as to liability, against the Debtor by virtue of the Mataeka Judgment. The Debtor concedes he has fewer than twelve creditors and Evergreen's claim exceeds the Section 303(b) statutory aggregate amount of $12,300.00. He conceded he is indebted to Evergreen pursuant to the Mataeka Judgment.

The core issue for determination is whether Evergreen's claim is the subject of a bona fide dispute. The Mataeka Judgment is an unstayed judgment that is enforceable against the Debtor. Cuthill established a bona fide dispute does not exist regarding both the liability and the amount of the debt owed by the Debtor to Evergreen. The Debtor failed to demonstrate a bona fide dispute exists. He, as his only evidence, simply reiterated the Appellants' bases for challenging the Mataeka Judgment on appeal. He concedes he owes a debt to Evergreen. He failed to

---

**31.** Collier explains: "[W]hile the term 'bona fide dispute as to liability or amount' is the same in subsections (b) and (h) of section 303, it relates to satisfying different requirements under the Code and may involve entirely different parties or a party with different types of claims." 2 COLLIER ON BANKRUPTCY ¶ 303.03[2][b], at 303–27.

**32.** "[I]t is important to distinguish between the ability of a single creditor to commence a case under section 303(b) and the ability of that one creditor to satisfy the elements of section 303(h)." 2 COLLIER ON BANKRUPTCY ¶ 303.04[6], at 303–44.

establish there is an objective basis for either a factual or legal dispute as to the validity of a Mataeka Judgment debt. Evergreen's claim is not subject to a bona fide dispute as to liability or amount.

Cuthill has established he is entitled to relief pursuant to 11 U.S.C. Section 303(b)(2). Evergreen qualifies to file an involuntary petition pursuant to Section 303(b)(2).

Cuthill has established the requirements of 11 U.S.C. Section 303(h). The totality of the circumstances reflects the Debtor was not generally paying his debts as they came due as of the Petition Date. Special circumstances exist for finding the requirements of 303(h) have been met. Cuthill lacks an adequate remedy outside of bankruptcy for collecting on the Mataeka Judgment and the only collection means exist within the bankruptcy forum. Cuthill established the Debtor has engaged in fraud, trick, artifice and/or sham in an attempt thwart collection of the Evergreen debt. An Order for Relief is due to be entered.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that Evergreen's Motion to Strike (Doc. No. 74) the Objection filed by the Debtor is hereby **GRANTED** the Debtor's Objection (Doc. No. 73) is **DENIED;** and it is further

**ORDERED, ADJUDGED and DECREED** that each of the elements of 11 U.S.C. Sections 303(b) and (h) have been established and an Order for Relief against J. Anthony Huggins shall be entered. The Clerk of Court is hereby directed to issue an Order for Relief on the Involuntary Petition.